| | |
|---|---|
| **SARAH BARNETT DONAHUE,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6036** |
| **SHERIFF RODNEY J. STRAIN, IN HIS**<br>**CAPACITY AS SHERIFF OF THE**<br>**PARISH OF ST. TAMMANY, ET AL.,**<br>    **Defendants** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court are three motions: (1) a motion for summary judgment filed by Defendant Brandon Donahue;[1] (2) a motion to dismiss pursuant to Rule 12(b)(6) filed by Defendant Brandon Donahue;[2] and (3) a motion to dismiss pursuant to Rule 12(b)(6) filed by Defendants Rodney J. Strain, Jr. (or his successor, sometimes referred to as the "Sheriff"),[3] Sergeant Michael Ripoll, Jr., Sergeant Alex Dantagnan, Jr., and Sergeant Steven Gaudet (sometimes referred to as the "Deputies").[4] The motions are opposed.[5] The Court rules on the motions as set forth below.

## BACKGROUND

The Plaintiff, Sarah Donahue, brings federal and state-law claims against her ex-husband, Brandon Donahue, the Sheriff, and the Deputies arising out of a "continuing

---

[1] R. Doc. 67.

[2] R. Doc. 37.

[3] Rodney J. Strain, Jr. is no longer the sheriff of St. Tammany Parish. The current sheriff of St. Tammany Parish is Randy Smith. When officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. FED. R. CIV. P. 25(d)(1). The Court will order the Clerk of Court to substitute Randy Smith in his official capacity as the Sheriff of St. Tammany Parish for Rodney J. Strain, Jr. For the purposes of this motion, the Court hereafter will refer to former Sheriff Strain as a defendant.

[4] R. Doc. 49. The Sheriff and the Deputies are referred to collectively as the "Sheriff Defendants."

[5] R. Docs. 38, 60, 85.

series of intentional actions all directed toward a sole end: to thwart the prosecution of Brandon Donahue, a fellow law enforcement office, for domestic violence."[6]

Brandon Donahue served as a reserve deputy with the St. Tammany Parish Sheriff's Office from 2012 until 2014.[7] According to the Plaintiff, Brandon Donahue "engaged in a pattern of violence against Sarah, which he justified and excused and was furthered by virtue of his position as a reserve deputy sheriff."[8] The Plaintiff alleges that, during the course of their marriage, Brandon Donahue threatened to kill her, threatened to use his Sheriff's office-issued taser on her, threw coffee in her face, pressed his knee into her stomach, and pushed the back of her body into a shower door.[9]

The Plaintiff alleges that on July 7, 2013, following a domestic disturbance between the Plaintiff and Brandon Donahue, "[s]everal of Brandon's colleagues from the St. Tammany Parish Sheriff's Office . . . responded to [a] 911 call at the Donahue residence."[10] According to the Plaintiff, she described her injuries to the deputies and advised them of Brandon Donahue's history of domestic abuse, but the deputies refused to arrest Brandon Donahue.[11] This incident, the Plaintiff alleges, was the first act in a continuing conspiracy between Brandon Donahue and the Deputies "to protect Brandon from prosecution for assault and to discredit Sarah in order to benefit Brandon in his anticipated divorce and child custody case against Sarah."[12]

The Plaintiff alleges that, in furtherance of the conspiracy, Sgt. Steven Gaudet conducted a "slip-shod and outcome[-]determinative" investigation into the Plaintiff's

---

[6] R. Doc. 35 at 12–13.
[7] *Id.* at 3, ¶ 11.
[8] *Id.* at ¶ 12.
[9] *See id.* at 3–4.
[10] *Id.* at 4.
[11] *Id.*
[12] *Id.* at 5.

allegations against Brandon Donahue. According to the Plaintiff, Sgt. Gaudet's police report "falsely suggested that Sarah had been the aggressor" and falsely stated that the Plaintiff did not want to pursue criminal charges against Brandon Donahue.[13] The Plaintiff further alleges that Sgt. Gaudet relied heavily on his "consultation" with Brandon Donahue instead of the alleged victim, the Plaintiff.[14]

In furtherance of the conspiracy, the Plaintiff alleges Sgt. Michael Ripoll, when investigating an alleged assault against the Plaintiff by the Plaintiff's attorney, "ignor[ed] and wholly disregard[ed] evidence that supported [the Plaintiff's] version of events and [relied] on information provided by Brandon Donahue that discredited [the Plaintiff] by portraying her as unstable and unreliable."[15]

According to the Plaintiff, the conspiracy continued when Brandon Donahue submitted a written request to the St. Tammany Parish Coroner's Office for an Order for Protective Custody for the Plaintiff, "alleging falsely that she had stated several times . . . that she ha[d] thought about suicide."[16] The Plaintiff alleges she was involuntarily admitted to the hospital, but was later released.[17]

Following her release from the hospital, the Plaintiff attempted to pick up her son "as it was her time to have custody of her child."[18] When the Plaintiff arrived at Brandon Donahue's parent's residence to retrieve her child, a St. Tammany Parish Sheriff's Office deputy informed her "he would not release the child to her, despite that it was [her] court-ordered night to have custody of her son."[19] In response, the Plaintiff called the Sheriff's

---

[13] *Id.* at 6.
[14] *Id.*
[15] *Id.* at 7.
[16] *Id.* at 8.
[17] *Id.* at 8–9.
[18] *Id.* at 9.
[19] *Id.*

Office, which dispatched Sergeant Alex Dantagnan. Sgt. Dantagnan allegedly "blocked [the Plaintiff] from exiting the house," "screamed in [the Plaintiff's] face that she was psychotic, [and] that she was not leaving with the child," and threatened to arrest her if she did not leave the house.[20]

This event prompted the Plaintiff to file a complaint with the Internal Affairs Division of the St. Tammany Parish Sheriff's Office on December 11, 2013. The Plaintiff's complaint alleged "unfair favoritism shown by the Sheriff's Office to Brandon Donahue" and a "continuous pattern of unfair and harassing treatment she received from the Sheriff's Office and the Defendant Deputies."[21] The Plaintiff alleges that, in furtherance of the conspiracy to protect Brandon Donahue, "the Sheriff's Office never contacted [her] to obtain more information or advise her of the status or outcome of her complaint."[22] According to the Plaintiff, the Sheriff's Office later advised her that Brandon Donahue had been cleared of any misconduct.

Finally, the Plaintiff alleges that, on June 24, 2015, she met with Sgt. Gaudet to inform him she wished to press criminal charges against Brandon Donahue for the alleged acts of domestic abuse that occurred in July of 2013.[23] In furtherance of the conspiracy to protect Brandon Donahue from arrest and prosecution, Sgt. Gaudet allegedly attempted to intimidate and discourage the Plaintiff from pursuing charges against Brandon Donahue by informing the Plaintiff that any criminal charge against Brandon Donahue had "probably prescribed."[24] According to the Plaintiff, Sgt. Gaudet promised to contact the district attorney's office, but never did so.

---

[20] *Id.* at 10.
[21] *Id.* at 10–11.
[22] *Id.* at 11.
[23] *Id.* at 12.
[24] *Id.*

Brandon Donahue was formally charged with domestic abuse aggravated assault by the St. Tammany Parish District Attorney's office. The charge was dismissed in July of 2016.[25]

The Plaintiff filed this lawsuit on November 18, 2015.[26] The Court stayed the proceedings pending the resolution of the criminal matter pending against Brandon Donahue.[27] This matter was reopened on September 22, 2016.[28] Thereafter, Brandon Donahue filed a motion to dismiss,[29] which was denied without prejudice upon the filing of the Plaintiff's second amended complaint.[30]

In her second amended complaint, the Plaintiff brings a claim under Section 1983 against Brandon Donahue and the Deputies in their official and individual capacities for conspiracy to violate her rights under the First and Fourteenth Amendments.[31] The Plaintiff also brings a *Monell* claim against the Sheriff in his official capacity for municipal liability for failure to supervise and train.[32] Further, the Plaintiff brings state-law tort claims against Brandon Donahue; a state-law claim for abuse of rights against Brandon Donahue, the Sheriff, and the Deputies; and claims against Brandon Donahue, the Sheriff, and the Deputies for violations of the Louisiana Constitution.[33]

On February 1, 2017, Brandon Donahue filed a motion to dismiss the Plaintiff's second amended complaint for failure to state a claim pursuant to Federal Rule of Civil

---

[25] *Id.*
[26] R. Doc. 1. The Plaintiff's amended complaint was filed on January 15, 2016. R. Doc. 11.
[27] R. Doc. 13.
[28] R. Doc. 20.
[29] R. Doc. 17.
[30] R. Doc. 27; R. Doc. 35 (Second Amended Complaint).
[31] R. Doc. 35 at 13.
[32] *Id.* at 14.
[33] *Id.* at 14–15. The Plaintiff's abuse of rights claims and claims for violations of the Louisiana Constitution against the Sheriff are for vicarious liability.

Procedure Rule 12(b)(6).[34] On May 8, 2017, the Sheriff Defendants filed a motion to dismiss the Plaintiff's claims against them pursuant to Rule 12(b)(6).[35] The Plaintiff opposes both motions.[36]

On July 11, 2017, Brandon Donahue filed a motion for summary judgment, arguing the doctrine of issue preclusion applies to the Plaintiff's state-law tort claims against him.[37]

## LEGAL STANDARD

### I. <u>Motion to Dismiss</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[38] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[39] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40] However, the court does not accept as true legal conclusions or mere conclusory statements,[41] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[42] "[T]hreadbare

---

[34] R. Doc. 37.
[35] R. Doc. 49.
[36] R. Docs. 38, 60.
[37] R. Doc. 67.
[38] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[40] *Id.*
[41] *Id.*
[42] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[43]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[44] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."[45] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[46]

## II.  **Motion for Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[47] "An issue is material if its resolution could affect the outcome of the action."[48] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[49] All reasonable inferences are drawn in favor of the nonmoving party.[50] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[51]

---

[43] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

[44] *Twombly*, 550 U.S. at 555.

[45] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

[46] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

[47] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[48] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[49] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[50] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[51] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[52] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[53]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) affirmatively demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[54] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[55] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by

---

[52] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[53] *Celotex*, 477 U.S. at 322–24 (Brennan, J., dissenting).

[54] *Id.* at 331–32.

[55] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

the moving party."[56] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[57] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[58] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[59]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[60]

---

[56] *Celotex*, 477 U.S. at 332–33.
[57] *Id.*
[58] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[59] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[60] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

# LAW AND ANALYSIS

I. **Brandon Donahue's Motion for Summary Judgment—Issue Preclusion**

Brandon Donahue filed a motion for summary judgment, seeking dismissal of the Plaintiff's tort claims against him on the basis of issue preclusion.[61] Brandon Donahue argues a Louisiana district court's judgment in the divorce and custody case between him and the Plaintiff is final, the domestic violence tort claims were decided by the state court judge, and the doctrine of issue preclusion prevents relitigation of these claims.

"When giving preclusive effect to a state court judgment, this court must apply the issue preclusion rules of that state."[62] Because the underlying judgment in this case is from the Twenty-Second Judicial District for the Parish of St. Tammany, Louisiana, Louisiana issue preclusion rules apply. Louisiana Revised Statutes section 13:4231 provides in pertinent part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> ***
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

"The requirements for issue preclusion under Louisiana state law are identical to those recognized by the Fifth Circuit: (1) the parties must be identical; (2) the issue to be

---

[61] R. Doc. 67.
[62] *In re Keaty*, 397 F.3d 264, 270–71 (5th Cir. 2005).

precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment."[63] Because Louisiana's law is modeled on the federal doctrine, federal courts can consult federal jurisprudence for guidance when interpreting Section 13:4231.[64]

In this case, it is undisputed that the parties are identical to those before the Louisiana district court. It is also true that the Louisiana district court heard testimony about many of the same allegations made by the Plaintiff in her second amended complaint.[65] The paramount question is whether the Plaintiff's state-law tort claims made in this Court were "actually litigated" in the Louisiana district court.

"The requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined."[66] The Fifth Circuit in *Keaty* explained "the scope of collateral estoppel is circumscribed by the particularized findings of the state court."[67] Thus, collateral estoppel applies only if the Louisiana district court made "specific, subordinate, factual findings on the identical . . . issue in question—that is, an issue which encompasses the same *prima facie* elements" as the issue before this Court.[68] "It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties; the contested issue must have been litigated and necessary to the judgment earlier rendered."[69]

---

[63] *Id.*
[64] *Id.* at 271 (citing *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000)).
[65] *See* R. Docs. 67-4, 67-5.
[66] *In re Keaty*, 397 F.2d at 272.
[67] *Id.* (citing *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)).
[68] *Id.*
[69] *Kaspar Wire Works, Inc. v. Leco Eng. And Mach.*, 575 F.2d 530, 536 (5th Cir. 1978).

Brandon Donahue argues these claims are barred by issue preclusion, because Judge Amacker in the divorce and custody proceeding between the Plaintiff and Brandon Donahue found there to be "no credible evidence . . . to suggest that any [of the Plaintiff's allegations of domestic violence are] true of Mr. Donahue."[70] Judge Amacker further stated "there was no evidence in [the divorce and custody proceeding] record that [Brandon Donahue] is an abuser or a violent person."[71]

Judge Amacker made these findings in the context of considering the twelve factors used in determining a child's best interest for the purposes of determining custody pursuant to Louisiana Code of Civil Procedure article 134.[72] Specifically, Judge Amacker discussed the Plaintiff's domestic abuse allegations against Brandon when determining "the moral fitness of each party, insofar as it affects the welfare of the child" and "the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party."[73]

The Plaintiff could not and did not bring state-law tort claims against Brandon Donahue in the divorce and custody proceeding.[74] Because these tort claims were not before her, Judge Amacker did not make factual findings with respect to the *prima facie* elements of the Plaintiff's state-law tort claims.[75]

The Court finds the Plaintiff's state-law tort claims were not "actually litigated" in the divorce and custody case before the Louisiana court. As a result, this Court is not

---

[70] R. Doc. 67-5 at 7.

[71] *Id.* at 11.

[72] LA. CODE CIV. PROC. art 134.

[73] *Id.*

[74] *Goodman v. Spillers*, 686 So. 2d 160, 167 (La. Ct. App. 2 Cir. 12/23/96) ("Issue preclusion does not bar re-litigation of what might have been litigated and determined, but only those matters in controversy upon which the prior judgment or verdict was actually based.").

[75] *In re Keaty*, 397 F.2d at 272 ("[C]ollateral estoppel applies only if the Louisiana district court made "specific, subordinate, factual findings on the identical . . . issue in question—that is, an issue which encompasses the same *prima facie* elements" as the issue before this Court.").

precluded from hearing the Plaintiff's state-law tort claims against Brandon Donahue or any claim under Section 1983 arising from the Plaintiff's domestic violence allegations.

Accordingly, Brandon Donahue's motion for summary judgment is denied.[76]

## II. **Brandon Donahue's Motion to Dismiss the Plaintiff's State-Law Tort Claims Against Him**

The Plaintiff brings state law tort claims against the Defendant Brandon Donahue, claiming her damages arose out of three crimes of violence—aggravated assault, aggravated battery, and domestic abuse aggravated assault.[77] Brandon Donahue seeks dismissal of these claims, arguing the claims have prescribed under Louisiana law because the prescriptive period for delictual actions is one year from the date the injury is sustained. In response, the Plaintiff contends the delictual actions for which she seeks relief arise due to damages sustained as a result of crimes of violence, for which the prescriptive period is two years pursuant to Louisiana Civil Code article 3493.10.

Regardless of whether a one-year or two-year prescriptive period applies, the Court must determine when the prescriptive period began to accrue. Louisiana Civil Code article 3469 provides "Prescription is suspended as between: the spouses during marriage."[78] The Plaintiff alleges her marriage to Brandon Donahue ended in September of 2014.[79] Thus, the prescriptive period for the Plaintiff's state-law tort claims began to accrue at that time. The Plaintiff filed the instant lawsuit on November 18, 2015.[80]

The Court must next determine whether the prescriptive period applicable to the Plaintiff's claims is the one-year period for delictual actions under Civil Code article 3492

---

[76] R. Doc. 67.
[77] R. Doc. 35.
[78] LA. CIV. CODE art. 3469.
[79] R. Doc. 38 at 17–18.
[80] R. Doc. 1. The Plaintiff did not raise these state-law tort claims against Brandon Donahue until she filed her first amended complaint on January 15, 2016. R. Doc. 11.

or the two-year period for delictual actions which arise due to damages caused by a crime of violence pursuant to Civil Code article 3493.10.

Article 3493.10 provides for a two-year prescriptive period for "delictual actions which arise due to damages sustained as a result of an act defined as a crime of violence under [Louisiana Revised Statutes section 14:2]."[81] Louisiana Revised Statutes section 14:2 defines "crimes of violence."[82] The Plaintiff alleges her delictual damages arise out of three "crimes of violence" committed against her by Brandon Donahue—aggravated assault, aggravated battery, and domestic abuse aggravated assault, and that as a result, the two-year prescriptive period applies.

The three crimes of violence alleged require the use of a "dangerous weapon."[83] A "dangerous weapon" is defined as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm."[84] Thus, the Court must consider each of the Plaintiff's factual allegations to determine whether she sufficiently alleges that her tort claims arise due to damages sustained as a result of an aggravated crime committed through the use of a dangerous weapon. If the Plaintiff alleges sufficient facts to establish that her delictual claims arose from "aggravated" crimes, the two-year prescriptive period provided for in article 3493.10 will apply. Otherwise, the one-year prescriptive period provided for in article 3492 will apply, and the Plaintiff's state-law tort claims will have prescribed.

---

[81] LA. CIV. CODE art. 3493.10.
[82] LA. REV. STAT. ANN. § 14:2(B).
[83] *See* La. Rev. Stat. Ann. § 14:37 ("Aggravated assault is an assault committed with a dangerous weapon."); *id.* § 14:34 ("Aggravated battery is a battery committed with a dangerous weapon."); *id.* § 14:37.7 ("Domestic abuse aggravated assault is an assault with a dangerous weapon committed by one household member or family member upon another household member or family member.").
[84] *Id.* at § 14:2(A)(3).

A. <u>Aggravated Assault</u>

The Plaintiff alleges that two incidents gave rise to her delictual damages arising out of aggravated assaults: (1) Brandon Donahue "threatened to use his Sheriff-issued taser"[85] and (2) Brandon Donahue told the Plaintiff that "due [to] his training and connections as a reserve deputy sheriff, he could get away with assaulting her and even killing her."[86]

Assault is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[87] Aggravated assault is defined as intentionally placing another in reasonable apprehension of receiving a battery "with a dangerous weapon."[88]

With respect to the Plaintiff's allegation that Brandon Donahue's threat to use his taser on her was an aggravated assault, the Plaintiff argues that, because a taser is a dangerous weapon, she was in reasonable apprehension of receiving a battery with a dangerous weapon, and thus Brandon Donahue committed an aggravated assault.[89] Although a taser may constitute a dangerous weapon in some circumstances,[90] the Court finds the Plaintiff has failed to alleged sufficient facts to show the Plaintiff was in reasonable apprehension of receiving a battery with a dangerous weapon under these circumstances.[91] The Plaintiff did not allege that Brandon Donahue had the taser in his

---

[85] R. Doc. 35 at 3–4, ¶ 12.
[86] *Id.*
[87] LA. REV. STAT. ANN. § 14:36.
[88] *Id.* § 14:37.
[89] R. Doc. 38 at 18.
[90] *See State v. Williams*, No. 2012 KA 1600, 2013 WL 1792646 (La. App. 1st Cir. 4/26/13) (declining to overturn jury's finding that a taser was used as a dangerous weapon); *United States v. Quiver*, 805 F.3d 1269, 1272 (10th Cir. 2015) (holding that a taser is a dangerous weapon capable of inflicting serious bodily injury for the purposes of an assault with a dangerous weapon conviction).
[91] Louisiana courts have found that a plaintiff must allege an "*imminent* threat of a battery" for there to be an assault. *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (emphasis added).

hand or even nearby when he made the threat. As a result, the Plaintiff was not in reasonable apprehension of a battery with a dangerous weapon. Accordingly, this claim is subject to the one-year prescriptive period under article 3492, and the claim for damages sustained as a result of an aggravated assault for threatening to use a taser must be dismissed.

The Plaintiff also alleges that Brandon Donahue committed aggravated assault when he threatened to kill her, and told her that he could get away with killing her due to his status as a reserve sheriff's deputy.[92] This threat—even if made—would not constitute an *aggravated* assault, as no dangerous weapon was used in effectuating the assault.[93] Accordingly, the Plaintiff has not sufficiently alleged that these damages arose as a result of an aggravated assault. Thus, this claim is subject to the one-year prescriptive period under article 3492, and the claim for damages sustained as a result of an aggravated assault for Brandon Donahue's alleged threat to kill her must be dismissed.

### B. Aggravated Battery

The Plaintiff alleges she suffered delictual damages that arose out of three incidents of aggravated battery: (1) Brandon Donahue "threw a cup of hot coffee in [the Plaintiff's] face with the intent to cause serious injury and disfigurement"; (2) Brandon Donahue "pinned [the Plaintiff] to the floor of their home and pressed his knee on her stomach with the intent to cause serious bodily injury"; and (3) Brandon Donahue "grabbed [the Plaintiff] by both of her arms and violently pushed the back of her body into the door of their bathroom shower."[94]

---

[92] R. Doc. 35 at 3–4.
[93] *Cf. State v. Hill*, No. 47,568–KA, 2012 WL 7859600 (La. Ct. App. Sep. 26, 2012) (finding the defendant committed aggravated assault when he threated to kill the victim while pointing a gun at the victim's head).
[94] R. Doc. 35 at 4.

Battery is "the intentional use of force or violence upon the person of another, or the intentional administration of a poison or other noxious liquid or substance to another."[95] Like aggravated assault, a necessary element of an aggravated battery is that the battery be committed with a dangerous weapon.[96]

With respect to the Plaintiff's allegation that Brandon Donahue threw a cup of hot coffee on her, the Plaintiff's claim fails because she does not allege sufficient facts to establish the coffee used in this incident constitutes a "dangerous weapon." There are, of course, instances in which a scalding hot liquid may constitute a dangerous weapon.[97] The Plaintiff, however, does not allege the coffee was scalding hot; instead she alleges it was hot. Hot coffee is not likely to produce great bodily harm. The coffee was not used in a manner "calculated or likely to produce . . . great bodily harm," thus rendering it a dangerous weapon. The Plaintiff fails to allege facts sufficient to show that Brandon Donahue's allegedly throwing hot coffee on her amounts to an aggravated battery. As a result, the Plaintiff's claim is subject to the one-year prescriptive period in article 3492, and has prescribed.

The Plaintiff also alleges that Brandon Donahue committed an aggravated battery when he "pinned [the Plaintiff] to the floor of their home and pressed his knee on her stomach with the intent to cause serious bodily injury."[98] The Plaintiff seems to concede that this incident does not rise to the level of *aggravated* battery. In her opposition to Brandon Donahue's motion to dismiss, the Plaintiff states "while Brandon may not have used a dangerous weapon against Sarah when he kneed her in the stomach and ripped

---

[95] La. Rev. Stat. Ann. § 14:33.
[96] *Id.* § 14:34.
[97] *See, e.g.*, *State v. Junior*, 70 So. 3d 47 (La. Ct. App. 5 Cir. 5/24/11) (defendant committed aggravated battery when he burned the victim with hot grease).
[98] R. Doc. 35 at 4.

her Cesarean stitches," he is liable for aggravated battery for other acts.[99] The Plaintiff is correct to concede this point. Pursuant to Louisiana law, although portions of the human body can be dangerous and may produce great bodily harm, there must be proof of the use of some inanimate instrumentality for a defendant to be guilty of aggravated assault or battery.[100] This claim also has prescribed and must be dismissed.

Finally, the Plaintiff alleges Brandon Donahue committed an aggravated battery when he "grabbed Sarah Donahue by both of her arms and violently pushed the back of her body into the door of their bathroom shower."[101] According to the Plaintiff, the shower door was used as a dangerous weapon, thus making the incident and act of aggravated battery.[102] To constitute a dangerous weapon for the purposes of determining whether the alleged battery was "aggravated," the weapon must have been *used* in a manner likely to cause great bodily harm.[103] The Plaintiff only alleges that Brandon Donahue pushed her into the shower door—the Plaintiff does not allege that Brandon Donahue used the shower door in a way to cause her great bodily harm.[104] As a result, the Plaintiff has failed to state a claim for delictual damages arising out of an aggravated battery with respect to Brandon Donahue allegedly pushing the Plaintiff into a shower door. This claim has prescribed and must be dismissed.

---

[99] R. Doc. 38 at 19.

[100] *James v. La. Laborers Health & Welfare Fund*, No. 91-672, 1993 WL 205095, at *5 (E.D. La. June 9, 1993) (citing *State v. Calvin*, 24 So. 2d 467, 469 (La. 1945)).

[101] R. Doc. 35 at 4.

[102] R. Doc. 38 at 19.

[103] *Id.* at § 14:2(A)(3) (emphasis added). *See State v. Legendre*, 362 So. 2d 570, 571 (La. 1978) (finding a concrete parking lot did not constitute a dangerous weapon because it was not *used* to produce great bodily harm).

[104] Louisiana courts have found that a defendant must actively use an object against a victim for it to be considered a dangerous weapon. *See, e.g.*, *State v. Barker*, 628 So. 2d 168, 177 (La. Ct. App. 2 Cir. 12/1/93) (defendant was found to have used a dangerous weapon when he wielded a hammer); *State v. White*, 590 So. 2d 1330, 1332 (La. Ct. App. 2 Cir. 1991) (finding a baseball bat to be a dangerous weapon when it was wielded during a robbery).

C.  Domestic Abuse Aggravated Assault

The Plaintiff seeks delictual damages sustained as a result of Brandon Donahue's alleged actions constituting the crime of domestic abuse aggravated assault. Louisiana Revised Statutes section 14:37.7 defines domestic abuse aggravated assault as "an assault with a dangerous weapon committed by one household member or family member upon another household member or family member."[105] The Plaintiff's factual allegations supporting her claim that domestic abuse aggravated assault occurred are the same as the facts alleged to support her claims that aggravated assaults and aggravated batteries occurred. Because the Court has found that each one of the Plaintiff's claims for damages arising out of aggravated assaults and aggravated batteries have prescribed, her claim for domestic abuse aggravated assault suffers the same fate.

Accordingly, all the Plaintiff's state-law tort claims against Brandon Donahue have prescribed and must be dismissed.

III.  **Motions to Dismiss the Plaintiff's Section 1983 Conspiracy Claim against Brandon Donahue and the Deputies on the Basis of Prescription**

The Plaintiff brings Section 1983 conspiracy claims against Brandon Donahue, Deputy Michael Ripoll, Jr., Deputy Alex Dantagnan, and Deputy Steven Gaudet, Sr. (the "Deputies") in their official and individual capacities, alleging they conspired to protect Brandon Donahue from prosecution for domestic abuse he allegedly committed against the Plaintiff.[106]

Both Brandon Donahue and the Deputies seek dismissal of the Plaintiff's Section 1983 conspiracy claims against them. Brandon Donahue argues the Plaintiff does not

---

[105] LA. REV. STAT. ANN. § 14:37.7.
[106] R. Doc. 35 at 5, ¶ 16.

state an actionable Section 1983 claim against him because she does not allege that he was acting under the color of state law.[107] The Deputies argue the Plaintiff's Section 1983 conspiracy claim has prescribed.[108]

A. Brandon Donahue, Even if Not Acting Under Color of State Law, May Have Liability Under Section 1983 for Conspiracy if He Acted Jointly with State Actors

As an initial matter, Brandon Donahue is correct that for the Plaintiff to state a cause of action against him under Section 1983, she must allege that he, as a person who deprived her of a federal right, was acting under color of state law.[109] If Brandon Donahue was a private citizen not acting under the color of state law at the time he allegedly violated the Plaintiff's constitutional rights, he still may have liability under Section 1983 if he conspired with or acted in concert with state actors.[110] A non-state actor may be liable under Section 1983 if the private citizen was a "willful participant in joint activity with the State or its agents."[111] Thus, Brandon Donahue may be individually liable under Section 1983 if he conspired with the Deputies to deprive the Plaintiff of her constitutional rights. The Plaintiff alleges Brandon Donahue and the Deputies reached an agreement to protect Brandon from criminal prosecution, and Brandon Donahue and the Deputies' acts violated the Plaintiff's constitutional rights.[112] Thus, the Plaintiff has sufficiently alleged that Brandon Donahue is a private actor who conspired with or acted in concert with state actors. As a result, the Plaintiff's Section 1983 claims against Brandon Donahue cannot be dismissed on this basis.

---

[107] R. Doc. 37-1 at 9.
[108] R. Doc. 49-1 at 18–23.
[109] *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004).
[110] *Id.* (citing *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994)).
[111] *Cinel*, 15 F.3d at 1343.
[112] R. Doc. 35 at 5, ¶ 17.

B.  Prescription of the Plaintiff's Conspiracy Claim Under Section 1983

Before the Court considers whether the Plaintiff has stated a claim for a Section 1983 conspiracy against Brandon Donahue and the Deputies, the Court also must address the Deputies' argument that the Plaintiff's Section 1983 conspiracy claim has prescribed.

Section 1983 conspiracy cases are governed by the prescriptive period for personal injury actions of the state in which the conduct occurred.[113] Wrongs committed by Louisiana state officials in violation of a plaintiff's constitutional rights are subject to the one-year prescriptive period for Louisiana tort actions.[114] However, to determine when a plaintiff's cause of action *accrues*, the Court must reference federal law.[115] "Federal law holds generally that an action accrues when a plaintiff has a complete and present cause of action, or, expressed differently, when the plaintiff can file suit and obtain relief."[116] The prescriptive period begins to run "the moment the plaintiff becomes aware that [she] has suffered an injury or has sufficient information to know that [she] has been injured."[117]

The Plaintiff does not dispute that a one-year prescriptive period applies to her Section 1983 conspiracy claims.[118] The Plaintiff, however, argues her conspiracy claims have not prescribed because they are subject to the "continuous violation doctrine," and, because Brandon Donahue and the Deputies' wrongful acts were repeated over time, "the cause of action does not accrue for limitations purposes until the date of the last harmful

---

[113] *Wilson v. Garcia*, 471 U.S. 261 (1985); *Jones v. Orleans Parish School Bd.*, 688 F.2d 342, 344 (5th Cir. 1982) ("It is well established in decisions in this Circuit that wrongs committed by Louisiana state officials in violation of federal law are considered to be torts subject to the one-year prescriptive period.").
[114] *Watts v. Graves*, 720 F2d 1416, 1423 (5th Cir. 1983).
[115] *Heath v. Bd. of Supervisors for the S. Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017); *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008).
[116] *Walker*, 550 F.3d at 414 (citing *Wallace v. Kato*, 549 U.S. 384 (2007)) (internal quotation marks omitted).
[117] *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).
[118] *See* R. Doc. 60.

act."[119] The last harmful act alleged by the Plaintiff was her encounter with Sgt. Gaudet on June 24, 2015, when the Plaintiff alleges she sought Sgt. Gaudet's assistance with pressing criminal charges against Brandon Donahue, and he informed her the claims had prescribed.[120] According to the Plaintiff, the prescriptive period on her Section 1983 conspiracy claim did not begin to accrue until that date, and thus her complaint filed on November 18, 2015[121] was timely as to all the wrongful acts.[122]

In the context of a conspiracy claim under Section 1983, "the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy."[123] The Fifth Circuit has found that "[c]haracterizing Defendants' separate wrongful acts as having been committed in furtherance of a conspiracy . . . does not postpone the accrual of claims based on individual wrongful acts . . . . To permit [a plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims."[124] "[A]ny cause of action against the defendants accrued as soon as plaintiff knew or should have known of the overt acts involved in the alleged conspiracy."[125]

In her second amended complaint, the Plaintiff alleges the first overt act of Brandon Donahue and the Deputies in furtherance of the conspiracy arose out of an incident on July 7, 2013, when "Brandon Donahue grabbed Sarah Donahue by both of her

---

[119] R. Doc. 60 at 21.
[120] *See* R. Doc. 35 at 12, ¶ 38.
[121] R. Doc. 1.
[122] R. Doc. 60 at 20–24.
[123] *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987). Compare the rule with respect to civil conspiracies with the statute of limitations for a federal *criminal* conspiracy, which does not begin to run until the last overt act pursuant to the conspiracy has been committed. *Id.* (citing *United States v. Parker*, 586 F.2d 422, 430 (5th Cir. 1978)).
[124] *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980)).
[125] *Id.*

arms and violently pushed the back of her body into the door of the bathroom shower."[126] According to the Plaintiff, after Brandon Donahue called 911 and St. Tammany Parish Sheriff's Office deputies arrived at the scene, Brandon Donahue was not arrested despite the Plaintiff informing them of Brandon Donahue's history of domestic abuse.[127] The Plaintiff alleges the conspiracy between Brandon Donahue and the Deputies "grew out of Sarah Donahue's July 7, 2013 report of her husband's criminally violent behavior."[128]

The second overt act alleged by the Plaintiff relates to a July 23, 2013 meeting the Plaintiff had with an attorney in St. Tammany Parish who "made inappropriate and unsolicited remarks to Sarah Donahue concerning, among other things, oral sex, and placed his hand inside her clothing and groped her breast."[129] Sgt. Ripoll was assigned to investigate the matter, and allegedly "ignor[ed] and wholly disregard[ed] evidence that supported Sarah Donahue's version of the events and rel[ied] on information provided by Brandon Donahue that discredited Sarah Donahue by portraying her as unstable and unreliable."[130] The Plaintiff alleges Sgt. Ripoll's actions were in furtherance of the conspiracy between him, the Deputies, and Brandon Donahue to protect Donahue and to discredit the Plaintiff.

The third overt act alleged by the Plaintiff as part of the conspiracy occurred on November 30, 2013, when Brandon Donahue allegedly submitted to the St. Tammany Parish Coroner's Office a written request for issuance of an Order of Protective Custody for Sarah Donahue, which the Plaintiff contends falsely stated she had "stated several

---

[126] R. Doc. 35 at 4, ¶ 15.
[127] *Id.*
[128] *Id.* at ¶ 16.
[129] *Id.* at 7, ¶ 22.
[130] *Id.* at ¶ 24.

times lately that she has thought about suicide."[131] After the Plaintiff was released from the St. Tammany Parish Hospital, she allegedly sent a text message to Brandon Donahue that she wished to pick up their son.[132] Upon arriving at Brandon Donahue's residence, the Plaintiff alleges multiple St. Tammany Parish Sheriff's Office deputies were present, including Sergeant Dantagnan, who allegedly "blocked [the Plaintiff] from leaving the house and told her very aggressively that she was not going to take her son out of the house."[133] The Plaintiff alleges Sgt. Dantagnan "told Sarah unless she left her son with Brandon voluntarily, he would arrest her and take her to jail."[134]

The fourth overt act alleged by the Plaintiff as part of the conspiracy occurred on December 11, 2013, when the Plaintiff lodged a complaint with the Internal Affairs Division ("IAD") of the St. Tammany Parish Sheriff's Office about "unfair favoritism shown by the Sheriff's Office to Brandon Donahue . . . and the continuous pattern of unfair and harassing treatment she received from the Sheriff's Office and the Defendant Deputies."[135] The Plaintiff alleges "the Sheriff's Office never contacted [her] to obtain more information or advise her of the status or outcome of her complaint."[136]

The final overt act alleged by the Plaintiff as part of the conspiracy occurred on June 24, 2015 when the Plaintiff met with Sgt. Gaudet, seeking to press charges against Brandon Donahue for the July 2013 battery.[137] According to the Plaintiff, "[i]n furtherance of the conspiracy to protect Brandon Donahue from arrest and prosecution, Sgt. Gaudet attempted to intimidate and discourage Sarah from pursuing charges against

---

[131] *Id.* at 8, ¶ 26.
[132] *Id.* at 9, ¶ 29.
[133] *Id.* at ¶ 32.
[134] *Id.*
[135] *Id.* at 10, ¶ 35.
[136] *Id.* at 11, ¶ 37.
[137] *Id.* at 12, ¶ 38.

Brandon."[138] The Plaintiff further alleges "Sgt. Gaudet falsely told Sarah that the matter had 'probably prescribed' because she waited too long to seek charges."[139] Sgt. Gaudet allegedly told the Plaintiff he would contact the district attorney's office, but never did so.[140]

The Court is not persuaded that the "continuing violation" doctrine applies in this case. "Courts typically find torts to be continuous in nature where each individual act would not necessarily give rise to a cause of action but the cumulative effect of regularly occurring or continuous actions results in successive damages from day to day."[141] The continuing violation doctrine applies when the "unlawfulness of [the] defendant's actions becomes apparent only after the cumulation of a series of related events," and "it does *not* apply to a series of related but discrete, discriminatory acts."[142] As the Fifth Circuit has noted, "courts, including this one, are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases."[143]

The Court finds that the actions alleged by the Plaintiff are discrete, overt acts, each of which could give rise to a cause of action for violations of the Plaintiff's constitutional rights. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filling charges alleging that act."[144] The Plaintiff [may only recover for

---

[138] *Id.*

[139] *Id.*

[140] *Id.*

[141] *Griffith v. City of New Orleans*, No. 11-245, 2013 WL 5592937, at *3 (E.D. La. Oct. 10, 2013) (citing *Hunter v. Tensas Nursing Home*, 743 So. 2d 839, 842 (La. App. 2d Cir. 1999)).

[142] *Brooks v. Menifee*, No. CV07-0131-A, 2010 WL 7827470, at *3 (W.D. La. Sept. 27, 2010), *report and recommendation adopted*, No. CV07-0131-A, 2011 WL 5117600 (W.D. La. Oct. 26, 2011).

[143] *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 n.27 (5th Cir. 1993).

[144] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002); *see also Hunter v. Jefferson Par. Pub. Sch. Sys.*, No. 17-2015, 2017 WL 2910992, at *7 (E.D. La. July 7, 2017) (quoting *Williams v. Otis Elevator Co.*, 557 Fed. App'x 229, 302 (5th Cir. 2014)) (The "continuous tort doctrine . . . does not suspend the statute of limitations indefinitely for discrete acts of discrimination simply because the ripple effects of those acts

those overt acts that [she has] specifically alleged occurred within the prescripti[ve] period."[145]

"[A]ny cause of action against the Defendants accrued as soon as the Plaintiff knew or should have known of the overt acts involved in the alleged conspiracy."[146] The Plaintiff knew at the time of each overt act of the alleged deprivations of her constitutional rights. As a result, each of the overt acts that occurred before November 18, 2014—one year before the Plaintiff filed her complaint—have prescribed.[147] Only the Plaintiff's Section 1983 conspiracy claim with respect to her June 24, 2015 interaction with Sgt. Gaudet occurred within the Section 1983 prescriptive period. The Plaintiff's causes of action under Section 1983 for alleged acts of the defendants occurring before November 18, 2014 have prescribed.[148]

This is not to say that the Court cannot consider the Plaintiff's allegations with respect to the four earlier acts. "Any act occurring outside the applicable filing period 'may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.'"[149] Although the Plaintiff cannot recover for damages arising from any acts the Defendants committed before November 18, 2014, the

---

cause lingering harm. It is the tort that must be continuous, not the repercussions of that tort. A continuing tort is occasioned by [the continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act.").

[145] *Morales v. State of La.*, No. 94-1194, 1996 WL 442229, at *5 (E.D. La. Aug. 2, 1996).

[146] *Helton*, 832 F.2d at 335. "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of [her] complaint. Thus, the statute of limitations begins to run from the moment the plaintiff becomes aware that [she] has suffered an injury or has sufficient information to know that [she] has been injured." *Id.* at 334–35.

[147] The Plaintiff's original complaint was filed on November 18, 2015. R. Doc. 1.

[148] *See Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

[149] *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 800 (E.D. Tex. 2013) (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)); *see also Morgan*, 536 U.S. at 112.

Section 1983 prescriptive period "does not preclude the jury from considering those events as evidence in support of its verdict that [the Defendants] committed overt acts in furtherance of the scheme after [November 18, 2014], thereby violating [the Plaintiff's constitutional] rights."[150]

### IV. <u>Brandon Donahue and the Sheriff Defendants' Motions to Dismiss the Plaintiff's Surviving Section 1983 Conspiracy Claim</u>

Now that the Court has concluded a single overt act alleged by the Plaintiff survives the Section 1983 time bar, the Court must now determine whether the Plaintiff states an actionable conspiracy claim against Brandon Donahue and the Deputies arising out of her June 24, 2015 interaction with Sgt. Gaudet.

To state a claim for conspiracy under Section 1983, the Plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act; and (2) a deprivation of constitutional rights.[151] Allegations that are merely conclusory, without reference to specific facts, will not suffice.[152]

#### A. Agreement

The Plaintiff alleges "Brandon Donahue and the Defendant Deputies reached an agreement to protect Brandon from prosecution for assault and to discredit [the Plaintiff] in order to benefit Brandon in his anticipated divorce and child custody case against [the Plaintiff]."[153] Further, the Plaintiff alleges the "Defendant Deputies communicated with Brandon Donahue—rather than Sarah Donahue . . . — during the course of the Sheriff's Office's . . . investigation of Sarah's assault."[154] Specifically, the Plaintiff alleges Sgt.

---

[150] *Turner v. Upton Cnty., Tex.*, 967 F.2d 181, 185 (5th Cir. 1992).
[151] *Priester*, 354 F.3d at 420.
[152] *Id.* (citing *Brinkman v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986)).
[153] R. Doc. 35 at 5, ¶ 17.
[154] R. Doc. 35 at 5, ¶ 17.

Gaudet contacted Brandon Donahue on July 16, 2013 as part of his investigation and created his investigation report "as a result of consultation with Brandon in order to discredit Sarah Donahue."[155] Further, the Plaintiff alleges Sgt. Ripoll, when investigating the Plaintiff's complaint about her interaction with her attorney, ignored evidence that supported the Plaintiff's version of events, and instead relied only "on information provided by Brandon Donahue."[156] Finally, the Plaintiff alleges Brandon Donahue "arranged for his colleagues and co-conspirators to be available to assist him" when the Plaintiff sought to retrieve her son from Brandon Donahue's residence.[157]

Construing the Plaintiff's factual allegations in her favor and drawing all reasonable inferences from them, the Court finds the Plaintiff has sufficiently alleged an agreement between Brandon Donahue, a private actor, and public defendants, the Deputies, to commit an illegal act.

### B. Deprivation of Constitutional Rights

The Court must next determine whether the Plaintiff has sufficiently alleged a deprivation of her constitutional rights. The Plaintiff alleges the acts of Brandon Donahue and the Deputies violated her "right to petition, free speech and association under the First Amendment to the United States Constitution, and her rights to privacy, liberty, due process, and equal protection under the Fourteenth Amendment."[158] The Court will address each in turn.

---

[155] *Id.* at 6, ¶ 21.
[156] R. Doc. 35 at 7, ¶ 24.
[157] *Id.* at 9, ¶ 29.
[158] R. Doc. 35 at 14, ¶ 45.

1.    *Equal Protection*

The Plaintiff alleges Brandon Donahue and the Deputies violated "her rights to privacy, due process, and equal protection under the Fourteenth Amendment."[159] With respect to her interaction with Sgt. Gaudet on June 24, 2015, the Plaintiff alleges she was "deprived of due process by [Brandon Donahue and the Deputies'] deliberate interference with her pursuit of relief from the crimes committed against her" and was "denied equal protection of laws offered to other, similarly-situated [sic] crime victims."[160]

With respect to her equal protection claim, the plaintiff contends she is "alleging that she, as a 'class of one,' was 'intentionally treated differently from others similarly situated' for no 'rational' reason."[161] In *Village of Willowbrook v. Olech*, the Supreme Court held that "the Equal Protection Clause can give rise to a cause of action on behalf of a 'class of one' even when the plaintiff does not allege membership in a protected class or group."[162] "To state a claim sufficient for relief, a single plaintiff must allege that an illegitimate animus or ill-will motivated her intentionally different treatment from others similarly situated and that no rational basis existed for such treatment."[163] Specifically, the Plaintiff must allege "that the unequal police protection had no rational basis," which requires the Plaintiff to show "that the defendant deliberately sought to deprive [her] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position."[164]

---

[159] R. Doc. 35 at 14, ¶ 45.
[160] R. Doc. 60 at 25.
[161] R. Doc. 60 at 25.
[162] *Shipp v. McMahon*, 234 F3d 907, 916 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).
[163] *Id.*
[164] *Id.* (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000)) (internal quotation marks omitted).

The Plaintiff has alleged "Sheriff Strain and the Defendant Deputies intentionally and maliciously failed to hold Brandon Donahue accountable for his misconduct, and singled out Sarah Donahue for unequal treatment when her husband, a St. Tammany Parish Deputy Sheriff, engaged in acts of domestic violence."[165] The Plaintiff further alleges the Defendants "engaged in a continuing series of intentional actions all directed toward a sole end: to thwart the prosecution of Brandon Donahue, a fellow law enforcement officer, for domestic violence."[166] Specific to her encounter with Sgt. Gaudet on June 24, 2015, the Plaintiff alleges Sgt. Gaudet discouraged the Plaintiff from pursuing charges against Brandon Donahue to "protect Brandon Donahue from arrest and prosecution."[167]

The Court finds the Plaintiff has sufficiently alleged that Brandon Donahue and the Deputies intentionally treated the Plaintiff differently from others similarly situated, that no rational basis for this treatment existed, and that the "illegitimate animus" of protecting their colleague from criminal prosecution was the motivating factor in the Brandon Donahue and the Deputies' treatment of the Plaintiff. According to the Plaintiff's allegations, the reasons for which the Deputies protected Brandon Donahue were of a "personal nature unrelated to the duties of the defendant's position."[168] As a result, the Plaintiff's "class of one" Equal Protection claim survives Brandon Donahue's and the Deputies' motions to dismiss.

---

[165] R. Doc. 35 at 13.
[166] R. Doc. 35 at 13.
[167] *Id.* at 12, ¶ 38.
[168] *Shipp*, 234 F.3d at 916 (quoting *Hilton*, 209 F.3d at 1008).

2.      *Due Process*

With respect to the Plaintiff's claim that Brandon Donahue and the Deputies violated her due process rights guaranteed by the Fourteenth Amendment, the Plaintiff argues the Brandon Donahue and the Deputies "deprived [her] of due process by [Brandon Donahue and the Deputies'] deliberate interference with her pursuit of relief from the crimes committed against her."[169]

The Plaintiff met with Sgt. Gaudet on July 24, 2015 because she "wanted to press charges against Brandon for the July 2013 battery."[170] The Plaintiff alleges Sgt. Gaudet "attempted to intimidate and discourage" her from pursuing charges against Brandon Donahue, telling her "that the matter had probably prescribed because she waited too long to seek charges."[171] According to the Plaintiff, Sgt. Gaudet "promised to contact [the Plaintiff] after he spoke with the [district attorney's] office" but never actually contacted the district attorney's office because he "never intended to pursue [the Plaintiff's] report."[172]

In a Section 1983 cause of action asserting a due process violation, a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment.[173] The Plaintiff fails to identify a life, liberty, or property interest that was violated by Brandon Donahue and the Deputies during the Plaintiff's July 24, 2015 encounter with Sgt. Gaudet. There is no constitutional right to have an individual criminally prosecuted.[174] As a result, any alleged act by Sgt. Gaudet that interfered with

---

[169] R. Doc. 60 at 25.
[170] R. Doc. 35 at 12, ¶ 38.
[171] R. Doc. 35 at 12, ¶ 38.
[172] R. Doc. 35 at 12, ¶ 38.
[173] *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995).
[174] *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

the Plaintiff's pursuit of criminal charges against Brandon Donahue does not amount to a violation of the Plaintiff's due process rights.[175]

C. The Plaintiff's Section 1983 Conspiracy Claim for Equal Protection Against Brandon Donahue and the Deputies in their Official Capacities

The Plaintiff's remaining Section 1983 conspiracy claim for violation of her constitutional right to equal protection is brought against Brandon Donahue and the Deputies in their official and individual capacities.[176] The Plaintiff's second amended complaint also names as a defendant Sheriff Rodney "Jack" Strain, Jr. in his official capacity as the Sheriff of St. Tammany Parish.[177] It is well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability.[178] Louisiana grants no capacity to be sued to any parish sheriff's office.[179] Concomitantly, a suit may not be filed against a parish sheriff's office. The Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office.[180]

When, as in this case, the Sheriff is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and it is appropriate to dismiss them.[181] Accordingly, the Plaintiff's Section 1983 conspiracy claims against

---

[175] The Plaintiff's complaint is less than clear as to which factual allegations could give rise to a violation of her First Amendment rights to petition, free speech, and association. To the extent the Plaintiff claims her rights under the First Amendment were violated because she was deprived of her right to seek redress from the courts, her First Amendment claim fails for the same reason.
[176] *See* R. Doc. 35.
[177] *Id.* at 2, ¶ 4.
[178] *Monell v. New York City Dept. of Social Servs*, 436 U.S. 658 (1978).
[179] *Cozzo v. Tangipahoa Par. Council-President Govt.*, 279 F.3d 273, 283 (5th Cir. 2002)
[180] *Jenkins v. Jefferson Par. Sheriff's Office*, 402 So. 2d 669, 671 (La. 1981)
[181] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

Michael Ripoll, Jr., Alex Dantagnan, and Steven Gaudet, Sr. in their official capacities are dismissed.[182]

> **D.** <u>The Plaintiff's Section 1983 Conspiracy Claim for Equal Protection Against Brandon Donahue and the Deputies in their Individual Capacities— Qualified Immunity</u>

The qualified immunity defense serves to shield government officials, sued in their individual capacities and performing discretionary functions, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[183] When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[184] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[185]

As discussed above, the Plaintiff has sufficiently alleged facts to state a claim under Section 1983 for conspiracy to violate her right to equal protection under the Fourteenth Amendment. Government officials are entitled to qualified immunity only to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[186] The Court finds the Plaintiff's right

---

[182] To the extent the Plaintiff asserts a claim against Brandon Donahue in his official capacity as a reserve deputy with the St. Tammany Parish Sheriff's Office, this claim also is dismissed.

[183] *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004).

[184] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Jordan v. City of New Orleans*, No. 15-1922, 2016 WL 633666, at *2 (E.D. La. Feb. 17, 2016).

[185] *Backe*, 691 F.3d at 648. *See also Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994) ("To survive a motion to dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense."); *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992).

[186] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

to equal protection, including "class-of-one" equal protection, was clearly established at the time of the alleged constitutional violation.[187] The Fifth Circuit in *Shipp v. McMahon* found that a class-of-one equal protection claim existed in the context of a domestic violence victim's allegation that she received unequal police protection because her husband's mother was a deputy at the sheriff's office.[188] Taking the well-pleaded allegations of the Plaintiff's second amended complaint as true, the Court finds that an objectively reasonable officer would have realized that discriminating against a person with respect to providing police protection was unlawful.

Thus, the Court finds the Plaintiff's second amended complaint, on its face, shows an unreasonable violation of a clearly established constitutional right, and the defense of qualified immunity does not warrant granting a motion to dismiss under Rule 12(b)(6).[189] The Defendants may re-urge their entitlement to qualified immunity by motion for summary judgment.

## V. <u>Motion to Dismiss the Plaintiff's Claim for *Monell* Supervisory Liability</u>

The Plaintiff claims Sheriff Strain is liable in his official capacity for failing to train and supervise his employees with respect to investigating domestic violence cases. The Sheriff seeks dismissal of this claim.

---

[187] For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[188] *Shipp*, 234 F.3d at 916.

[189] Even though only Sgt. Gaudet was directly involved in the incident that allegedly occurred on June 24, 2015, the other defendants may still be liable to the Plaintiff for conspiring to violate her right to equal protection. *See Latiolais v. Cravins*, 484 F. App'x 983, 991 (5th Cir. 2012) ("Regardless of whether or not [a defendant's] actions alone actually caused a constitutional violation, liability can still be imposed on him through his alleged membership in the conspiracy.").

A municipality may be liable under § 1983 if it "subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."[190] To prevail on a § 1983 claim against a local government or municipality, a plaintiff must establish: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.[191] The Sheriff does not dispute that he is the policymaker for the St. Tammany Parish Sheriff's Office.

An "official policy" for purposes of § 1983 includes the following: (1) "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority"; and (2) a persistent and widespread practice of city officials or employees, "which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[192]

The Plaintiff's *Monell* claim is based on Sheriff Strain's failure to supervise and train his employees. The failure to train or inadequate training of officers can be an official policy that subjects the municipality to liability under § 1983, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact."[193] A claim for failure to train must allege sufficient facts to show that (1) the municipality adopted inadequate training procedures, (2) acted with deliberate

---

[190] *Connick*, 563 U.S. at 60 (internal quotation marks omitted).
[191] *Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010).
[192] *Brown v. Bryan Cty., OK*, 219 F.3d 450, 457 (5th Cir. 2000). "Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).
[193] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

indifference in doing so, and (3) the inadequate training policy directly caused the plaintiff's injury.[194]

The Sheriff argues the Plaintiff fails to sufficiently allege that a policy existed or that he acted with deliberate indifference. Usually, a plaintiff suing a municipality must provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests."[195] "Allegations that provide such notice could include . . . past incidents of misconduct to others, multiple harms that occurred to the plaintiff [herself], misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy."[196]

The Plaintiff alleges the "Sheriff . . . has had longstanding policies, practices, and/or customs of failing to properly train and supervise his deputies, including each of the defendant deputies, on the proper handling, investigation, and disposition of domestic violence incidents and complaints, thereby compromising the quality, completeness, and consistency of investigations, written reports, and arrests in such cases."[197] The Plaintiff further alleges "[t]hese policies, practices and/or customs were the moving force and proximate cause of the damages suffered by Sarah Donahue . . . ."[198]

The Court finds the Plaintiff's allegations are sufficient to state a *Monell* claim at the motion to dismiss stage. The Plaintiff alleges multiple instances of misconduct

---

[194] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). A *Monell* plaintiff must "establish both the causal link ("moving force") and the [municipality's] degree of culpability ("deliberate indifference" to federally protected rights)" because "[w]here a court fails to adhere to the rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Piotrowski v. City of Houston*, 237 F.3d at 580.
[195] *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 841 (S.D. Tex. Aug. 1, 2011) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination*, 507 U.S. 163, 168 (1993)).
[196] *See Thomas*, 800 F. Supp. 2d at 843–44.
[197] R. Doc. 35 at 14, ¶ 51.
[198] *Id.* at ¶ 52.

involving at least three different officers.[199] The Plaintiff also alleges a specific topic on which the Sheriff's policies are insufficient or non-existent—the investigation and handling of domestic violence cases.[200] The Court notes that "[i]n the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery."[201] "Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general."[202]

The Plaintiff's allegations provide to the Sheriff "fair notice of the nature of the claim" and "grounds on which the claim rests,"[203] and also "permit the court to infer more than the mere possibility of misconduct."[204] As a result, the Sheriff's motion to dismiss the Plaintiff's claim for *Monell* liability is denied.

## VI. **Brandon Donahue, the Sheriff, and the Deputies' Motions to Dismiss the Plaintiff's Claims for Abuse of Rights**

The Plaintiff brings state-law claims for abuse of rights against Brandon Donahue and the Deputies.[205] The Plaintiff alleges Brandon Donahue, the Sheriff, and the Deputies'

---

[199] *See, e.g.*, R. Doc. 35 at 5 (Sgt. Gaudet's investigation of the July 7, 2013 incident of domestic violence with Brandon Donahue); *id.* at 7 (Sgt. Ripoll's investigation of the July 25, 2013 incident with the Plaintiff's attorney); *id.* at 9–10 (Sergeant Dantagnan's involvement with the November 30, 2013 incident); *id.* at 11–12 (Sgt. Gaudet's discouraging the Plaintiff on June 24, 2015 against filing criminal charges against Brandon Donahue for domestic violence).

[200] *Id.* at 14.

[201] *Thomas*, 800 F. Supp. 2d at 843.

[202] *Id.* at 843–44.

[203] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

[204] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). The Supreme Court in *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit* held federal courts should not apply a heightened pleading standard to Section 1983 claims against municipalities. 507 U.S. 163, 168 (1993). *Leatherman* pre-dates *Twombly* and *Iqbal*.

[205] R. Doc. 35 at 16. The Plaintiff brings a claim against the Sheriff for vicariously liability for the Deputies' abuse of rights.

are liable "under the doctrine of abuse of rights for each of their acts undertaken in furtherance of their conspiracy because their predominant motive for [the] exercise of their rights as law enforcement officers was to protect Brandon Donahue from criminal responsibility for his acts and to cause harm to Sarah Donahue."[206]

"The doctrine of abuse of rights has been invoked sparingly in Louisiana."[207] "The abuse of rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights."[208] The abuse of rights doctrine applies only when one of the following conditions are met:

> (1) the predominant motive for exercise of the right is to cause harm;
> (2) there is no serious or legitimate motive for exercise of the right;
> (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or
> (4) the exercise of the right is for a purpose other than that for which it was granted.[209]

The Court first points out that any claim for abuse of rights against the defendants arising out of acts occurring before November 18, 2015 have prescribed. Louisiana's one-year liberative prescriptive period applies to claims for abuse of rights.[210]

Even if the Plaintiff's abuse of right claims had not prescribed, the Court finds the Plaintiff fails to state a claim for abuse of rights against Brandon Donahue or the Deputies. The Plaintiff's second amended complaint does not sufficiently allege that the acts of any of the defendants met any of the four conditions required to state an abuse of right claim. Further, the Plaintiff's contention that the defendants "exercised their rights as law

---

[206] *Id.* at ¶ 62.
[207] *Steier v. Heller*, 732 So. 2d 787, 790 (La. Ct. App. 2 Cir. 5/5/99).
[208] *Id.*
[209] *Id.* at 791.
[210] LA. CIV. CODE art. 3492, cmt. b; *see also Adams v. First Nat'l Bank of Commerce*, 644 So. 2d 219, 223 (La. Ct. App. 4 Cir. 9/29/94).

enforcement officers" does not square with the purpose of an abuse of rights claim. The abuse of rights doctrine typically applies in cases implicating contractual or property rights.[211]

Accordingly, the Plaintiff's claims for abuse of rights must be dismissed.

VII. **Brandon Donahue and the Sheriff Defendants' Motions to Dismiss the Plaintiff's Claims for Punitive Damages under Section 1983**

The Plaintiff seeks punitive damages against Brandon Donahue, the Sheriff, and the Deputies' on all claims under Section 1983.[212] The Plaintiff states that she "does not disagree that recovery of punitive damages in this action are limited to her § 1983 claims against Defendants in their individual capacities."[213]

Punitive damages may be awarded in §1983 cases only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[214] The "callous indifference" standard requires 'recklessness in its subjective form, i.e. a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations."[215]

The Plaintiff alleges that the defendants "engaged in a continuing series of intentional actions all directed toward a sole end: to thwart the prosecution of Brandon Donahue."[216] The Court finds defendants' actions as alleged in the complaint fail to rise

---

[211] *Schexnider v. Schexnider*, No. 6:11-CV-2148, 2014 WL 3899132, at *7 (W.D. La. Aug. 8, 2014).

[212] R. Doc. 35 at 18.

[213] R. Doc. 60 at 24. *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981) ("Because absolute immunity from such damages obtained at common law and was undisturbed by the 42d Congress, and because that immunity is compatible with both the purposes of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). The Court has determined, *supra*, that the only claim remaining against any officer in his individual capacity is for conspiracy to violate the Plaintiff's constitutional right to equal protection.

[214] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

[215] *Williams v. Kaufman Cty*., 352 F.3d 994, 1015 (5th Cir. 2003) (internal quotation marks omitted).

[216] R. Doc. 35 at 12–13.

to the level of an "evil motive or intent" or "callous indifference." As a result, the Plaintiff has failed to state a claim for punitive damages under §1983 and those claims must be dismissed.[217]

VIII. **Requests for Attorney's Fees Pursuant to 42 U.S.C. § 1988**

In her second amended complaint, the Plaintiff seeks attorney's fees pursuant to 42 U.S.C. § 1988 in the event she prevails in her claims against the defendants.

Section 1988 provides, in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The Court, having found that the Plaintiff's Section 1983 conspiracy claim and her *Monell* claim survive Rule 12(b)(6) dismissal, likewise concludes that the Plaintiff's claims under Section 1988 are not subject to dismissal at this stage.[218]

Additionally, both Brandon Donahue, the Sheriff, and the Deputies seek attorney's fees under Section 1988 in the event they prevail, arguing the Plaintiff's civil rights claims against them are frivolous.[219] "A district court may award attorney's fees to a prevailing civil rights defendant only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation."[220] "Thus, attorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit."[221]

---

[217] *See, e.g., Thomas v. Frederick*, 766 F. Supp. 540, 562 (W.D. La. 1991) (finding that the plaintiff was entitled to recover punitive damages from the defendant sheriff because the sheriff "failed to go through even the procedural motions of carrying out his [] obligations, much less did he have any real objective of finding the truth . . .").

[218] *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978)) ("[A] prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances.").

[219] R. Docs. 37-1 at 16; 49-1 at 38.

[220] *Dean*, 240 F.3d at 508 (quoting *Christiansburg*, 434 U.S. at 421) (internal quotation marks omitted).

[221] *Id.*

The Plaintiff's dismissed claims do not rise to the level of being vexatious or frivolous. Although many were dismissed, there is no indication that "[t]he plaintiff acted wrongly in leveling such allegations,"[222] as the Plaintiff provided reasonable arguments as to why these claims were viable. Accordingly, the defendants' requests for attorney's fees pursuant to Section 1988 as to the claims dismissed in this order are denied.

## CONCLUSION

**IT IS ORDERED** that Brandon Donahue's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Brandon Donahue's motion to dismiss the Plaintiff's state-law tort claims against him is **GRANTED**. The Plaintiff's state-law tort claims against Brandon Donahue are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Brandon Donahue and the Sheriff Defendants' motions to dismiss the Plaintiff's claims for conspiracy under 42 U.S.C. § 1983 against Brandon Donahue, Michael Ripoll, Jr., Alex Dantagnan, and Steven Gaudet, Sr., in their official and individual capacities, on the basis of prescription are **GRANTED** with respect to those allegedly wrongful actions that occurred before November 18, 2014, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Brandon Donahue and the Sheriff Defendants' motions to dismiss the Plaintiff's claims for conspiracy under 42 U.S.C. § 1983 against Brandon Donahue, Michael Ripoll, Jr., Alex Dantagnan, and Steven Gaudet, Sr. in their individual capacities are **DENIED** insofar as the Plaintiff alleges that Brandon

---

[222] *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011).

Donahue and the Deputies conspired to violate her right to equal protection by the overt act occurring on June 24, 2015.

**IT IS FURTHER ORDERED** that Brandon Donahue and the Sheriff Defendants' motions to dismiss the Plaintiff's claims for conspiracy under 42 U.S.C. § 1983 in their official and individual capacities are **GRANTED** insofar as the Plaintiff alleges that Brandon Donahue and the Deputies violated her rights to petition, free speech, and association under the First Amendment and to due process under the Fourteenth Amendment by the overt act occurring on June 24, 2015 and these claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Plaintiff's Section 1983 conspiracy claim against Brandon Donahue, Michael Ripoll, Jr., Alex Dantagnan, and Steven Gaudet, Sr. in their official capacities for violation of her right to equal protection arising out of the overt act occurring on June 24, 2015 is **DISMISSED WITH PREJUDICE**, but this claim may proceed against the Sheriff.

**IT IS FURTHER ORDERED** that the Sheriff's motion to dismiss the Plaintiff's claim against the Sheriff in his official capacity for *Monell* liability is **DENIED.**

**IT IS FURTHER ORDERED** that Brandon Donahue and the Sheriff Defendants' motions to dismiss the Plaintiff's abuse of rights claims are **GRANTED**. The Plaintiff's claims for abuse of rights are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Brandon Donahue and the Sheriff Defendants' motions to dismiss the Plaintiff's claims for punitive damages arising out of her Section 1983 claims against the Brandon Donahue, the Sheriff, and the Deputies in their official capacities are **GRANTED**. The Plaintiff's claims for punitive damages are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Brandon Donahue and the Sheriff Defendants' motions to dismiss the Plaintiffs' request for attorney's fees pursuant to 42 U.S.C. § 1988 are **DENIED**.[223]

**IT IS FURTHER ORDERED** that Brandon Donahue and the Sheriff Defendants' requests for attorney's fees pursuant to 42 U.S.C. § 1988 with respect to those of the Plaintiff's claims that are dismissed in this Order are **DENIED**.

**New Orleans, Louisiana, this 3rd day of August, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[223] Four of the Plaintiff's claims survive the motions to dismiss before the Court: (1) the Plaintiff's Section 1983 conspiracy claim against Brandon Donahue and the Deputies, in their individual capacities, for conspiring to violate her right to equal protection arising out of the overt act occurring on June 24, 2015; (2) the Plaintiff's Section 1983 conspiracy claim against the Sheriff, as the proper defendant for the Plaintiff's claims against the Deputies in their official capacities, for the alleged violation of her right to equal protection arising out of the overt act occurring on June 24, 2015; (3) the Plaintiff's Section 1983 claim against the Sheriff, in his official capacity, for *Monell* liability; and (4) the Plaintiff's request for attorney's fees pursuant to 42 U.S.C. § 1988, in the event she is the prevailing party on any of the above claims.