| | |
|---|---|
| **SARAH BARNETT DONAHUE,** | **CIVIL ACTION** |
| **Plaintiff** | |
| **VERSUS** | **NO. 15-6036** |
| **RANDY SMITH, ET AL.,** | **SECTION "E" (3)** |
| **Defendants** | |

## ORDER AND REASONS

Before the Court are Defendants Brandon Donahue;[1] Sheriff Rodney J. Strain, Jr. (the "Sheriff");[2] and Sergeants Michael Ripoll, Jr., Alex Dantagnan, Jr., and Steven Gaudet's (collectively the "Deputies")[3] motions for summary judgment. Plaintiff Sarah Donahue opposes each motion.[4] The Court rules on the motions as set forth below.

## BACKGROUND

Plaintiff brings federal and state law claims against her ex-husband, Brandon Donahue; the Sheriff; and the Deputies, alleging Defendants conspired "to thwart the prosecution of Brandon Donahue, a fellow law enforcement officer, for domestic violence."[5] On August 3, 2017, this Court ruled on Defendants' motions to dismiss.[6]

Plaintiff's remaining federal claims are her claims against (1) Brandon Donahue and the Deputies, in their individual capacities, for the alleged conspiracy to violate her right to equal protection under § 1983; (2) the Sheriff, as the proper defendant for Plaintiff's claims against the Deputies in their official capacities, for the alleged conspiracy

---

[1] R. Doc. 93.
[2] R. Doc. 90. Former-Sheriff Strain's successor is Randy Smith. When officials sued in their official capacities leave office, their successors assume their role in the litigation. FED. R. CIV. P. 25(d)(1).
[3] R. Doc. 91.
[4] R. Docs. 103, 113, 114.
[5] R. Doc. 35 at 12–13.
[6] R. Doc. 88.

to violate her right to equal protection under § 1983; (3) the Sheriff, in his official capacity, for *Monell* liability; and (4) Plaintiff's request for attorney's fees pursuant to 42 U.S.C. § 1988, in the event she is the prevailing party on any of the above claims.[7] Plaintiff's remaining state-law claims are her claims against (1) Brandon Donahue and the Deputies for violating Plaintiff's right to equal protection under the Louisiana Constitution by actions occurring within one year of her filing suit on November 18, 2015, and (2) her claim against the Sheriff based on respondent superior for Brandon Donahue's and the Deputies' alleged state constitutional violation of Plaintiff's right to equal protection.[8]

Brandon Donahue served as a reserve deputy with the St. Tammany Parish Sheriff's Office from 2012 until 2014.[9] According to Plaintiff, Brandon Donahue "engaged in a pattern of violence against Sarah, which he justified and excused and was furthered by virtue of his position as a reserve deputy sheriff."[10] Plaintiff alleges that, during the course of their marriage, Brandon Donahue threatened to kill her, threatened to use his Sheriff's office-issued taser on her, threw coffee in her face, pressed his knee into her stomach, and pushed the back of her body into a shower door.[11] To provide context, the Court summarizes Plaintiff's allegations below.

According to Plaintiff, on July 7, 2013, following a domestic disturbance between Plaintiff and Brandon Donahue, "[s]everal of Brandon Donahue's colleagues from the St. Tammany Parish Sheriff's Office . . . responded to [a] 911 call at the Donahue residence."[12] Plaintiff claims she described her injuries to the responding officers and advised them of

---

[7] R. Doc. 88 at 43 n.223.
[8] R. Doc. 11 at 13–14, ¶¶ 46–52.
[9] R. Doc. 35 at 3, ¶ 11.
[10] *Id.* at ¶ 12.
[11] *Id.* at ¶ 12.
[12] *Id.* at 4.

Brandon Donahue's history of domestic abuse, but the responding officers refused to arrest Brandon Donahue.[13] This incident, Plaintiff alleges, was the first act in a continuing conspiracy between Brandon Donahue and the Deputies "to protect Brandon Donahue from prosecution for assault and to discredit Sarah in order to benefit Brandon Donahue in his anticipated divorce and child custody case against Sarah."[14]

Plaintiff alleges that, in furtherance of the conspiracy, Sergeant Steven Gaudet conducted a "slip-shod and outcome[-]determinative" investigation into Plaintiff's allegations against Brandon Donahue. According to Plaintiff, Gaudet's police report "falsely suggested that Sarah had been the aggressor" and falsely stated that Plaintiff did not want to pursue criminal charges against Brandon Donahue.[15] Plaintiff further alleges that Gaudet relied heavily on his "consultation" with Brandon Donahue instead of Plaintiff, the alleged victim.[16]

In furtherance of the conspiracy, Plaintiff contends Sergeant Michael Ripoll, when investigating an alleged assault against Plaintiff by Plaintiff's attorney, "ignor[ed] and wholly disregard[ed] evidence that supported [Plaintiff's] version of events and [relied] on information provided by Brandon Donahue that discredited [Plaintiff] by portraying her as unstable and unreliable."[17]

According to Plaintiff, the conspiracy continued when Brandon Donahue submitted a written request to the St. Tammany Parish Coroner's Office for an Order for Protective Custody for Plaintiff, "alleging falsely that she had stated several times . . . that

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 7.

she ha[d] thought about suicide."[18] Plaintiff alleges she was involuntarily admitted to the hospital, but was later released.[19]

Following her release from the hospital, Plaintiff attempted to pick up her son "as it was her time to have custody of her child."[20] When Plaintiff arrived at Brandon Donahue's parents' residence to retrieve her child, a St. Tammany Parish Sheriff's Office deputy informed her "he would not release the child to her, despite that it was [her] court-ordered night to have custody of her son."[21] In response, Plaintiff called the Sheriff's Office, which dispatched Sergeant Alex Dantagnan. Dantagnan allegedly "blocked [Plaintiff] from exiting the house," "screamed in [Plaintiff's] face that she was psychotic, [and] that she was not leaving with the child," and threatened to arrest her if she did not leave the house.[22]

Plaintiff alleges that this event prompted her to file a complaint with the Internal Affairs Division of the St. Tammany Parish Sheriff's Office on December 11, 2013. Plaintiff's complaint alleged "unfair favoritism shown by the Sheriff's Office to Brandon Donahue" and a "continuous pattern of unfair and harassing treatment she received from the Sheriff's Office and the Defendant Deputies."[23] Plaintiff alleges that, in furtherance of the conspiracy to protect Brandon Donahue, "the Sheriff's Office never contacted [her] to obtain more information or advise her of the status or outcome of her complaint."[24] According to Plaintiff, the Sheriff's Office later advised her that Dantagnan had been cleared of any misconduct.

---

[18] *Id.* at 8.
[19] *Id.* at 8–9.
[20] *Id.* at 9.
[21] *Id.*
[22] *Id.* at 10.
[23] *Id.* at 10–11.
[24] *Id.* at 11.

Finally, Plaintiff alleges that, on June 24, 2015, she met with Gaudet to inform him she wished to press criminal charges against Brandon Donahue for the alleged acts of domestic abuse that occurred in July of 2013. Plaintiff claims that, in furtherance of the conspiracy to protect Brandon Donahue from arrest and prosecution, Gaudet attempted to intimidate and discourage Plaintiff from pursuing charges against Brandon Donahue by informing Plaintiff that any criminal charge against Brandon Donahue had "probably prescribed."[25] According to Plaintiff, Gaudet promised to send reports from the July 2013 incident to the district attorney's office, but never did so.

Plaintiff alleges that Brandon Donahue was formally charged with domestic abuse aggravated assault by the St. Tammany Parish District Attorney's office, and the charge was dismissed in July of 2016.[26]

## ANALYSIS

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] "An issue is material if its resolution could affect the outcome of the action."[28] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[29] All reasonable inferences are drawn in favor of the non-moving party.[30] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[25] *Id.* at 12.
[26] *Id.*
[27] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[28] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[29] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[30] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[31]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[32] If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, to satisfy Federal Rule of Civil Procedure 56's burden, the moving party must do one of two things: it "may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[33] When the moving party chooses the latter option it

> must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record.[34]

If the moving party fails to carry this burden, the motion must be denied.

If the moving party successfully carries its burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[35] Thus, the non-moving party may

---

[31] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[32] *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 323).
[33] *Celotex*, 477 U.S. at 331.
[34] *Id.* (internal citation omitted).
[35] *Id.* at 322–25.

defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[36] "[U]nsubstantiated assertions are not competent summary judgment evidence."[37] Rather, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[38]

## SECTION 1983 CONSPIRACY CLAIMS

To state a claim for conspiracy under § 1983, Plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of a constitutional right.[39] Plaintiff's remaining claim of an underlying constitutional deprivation is her right to equal protection. To make out a "class of one" equal protection claim, Plaintiff must prove Defendants intentionally treated her differently from the way they treated similarly situated individuals without any rational reason for doing so and that this differential treatment was motivated by "an illegitimate animus or ill-will" towards Plaintiff.[40]

In their motions for summary judgment, Defendants seek dismissal of Plaintiff's § 1983 conspiracy claims, arguing the evidence Plaintiff puts forth in support of her allegations cannot establish, even circumstantially, that Defendants agreed to deprive her

---

[36] *Id.* at 332–33.

[37] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).

[38] *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

[39] *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004).

[40] *See Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

of any rights protected by the U.S. or Louisiana Constitutions.[41] Defendants further argue that, even if Plaintiff can show an agreement, she has not put forth sufficient evidence to show Defendants treated Plaintiff differently from the way they treated any other alleged victim of domestic violence or that any disparate treatment stemmed from Defendants' ill will towards Plaintiff.[42] Plaintiff claims she has offered sufficient circumstantial evidence to demonstrate genuine issues of material fact exist with respect to these issues and that Defendants are not entitled to summary judgment with respect to her § 1983 claims.[43]

### Existence of Agreement

To establish the existence of a conspiracy, a plaintiff "must show that the defendants agreed to commit an illegal act"[44] and "allege specific facts to show [their] agreement."[45] Allegations that are merely conclusory, without reference to specific facts, will not suffice.[46] "This requirement must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence."[47] A conspiracy allegation under § 1983 allows a plaintiff to "impose liability on all of the defendants without regard to who committed the particular act."[48] "A private party may be held liable under § 1983 if he or she is a 'willful participant in joint activity with the State or its agents.'"[49]

---

[41] R. Doc. 90-3 at 7; R. Doc. 91-3 at 8–9; R. Doc. 93-1 at 1.
[42] R. Doc. 91-3 at 20–22.
[43] R. Doc. 103 at 10–12.
[44] *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982); *see also Hale v. Townley*, 45 F.3d 914, 920–21 (5th Cir. 1995); *Manton v. Strain*, No. 09-0339, 2010 WL 4364552, at *6 (E.D. La. Oct. 21, 2010).
[45] *Priester*, 354 F.3d at 412.
[46] *Id.* (citing *Brinkman v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986)).
[47] *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982) (quoting *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979)).
[48] *Hale*, 45 F.3d at 920.
[49] *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

To show an illegal agreement, a plaintiff's evidence, "when 'placed in . . . context . . . [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'"[50] In *Jabary v. City of Allen*,[51] to support his § 1983 conspiracy claims, the plaintiff alleged the defendants "held private meetings to devise a method of shutting down" the plaintiff's business and they had "several conversations, private meetings, and other communications" in which the defendants discussed ways to "deprive [the plaintiff] of his civil rights and the due process of the law."[52] Even at the motion to dismiss stage, allegations that the defendants held "private meetings," were not sufficient when, as the Fifth Circuit noted, "[t]he times, places, and other circumstances of the 'private meetings' and secret conversations [were] notably absent" from the plaintiff's evidence. The Fifth Circuit held that the plaintiff "fail[ed] to create a reasonable inference that such an agreement existed."[53]

In *Thomas v. City of New Orleans*,[54] the Fifth Circuit held the plaintiff had put forth sufficient evidence at the trial of the case to show the defendants had agreed to commit an illegal act that resulted in his injury. In that case, the plaintiff, a police officer, testified that after he reported a fellow officer for using deadly and unnecessary force in executing a misdemeanor arrest, he was suspended and ultimately discharged.[55] The record showed "that the various defendants had participated in private meetings during which [the plaintiff's] contentions were discussed" and included witnesses who testified

---

[50] *Jabary v. City of Allen*, 547 F. App'x 600, 611 (5th Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).
[51] 547 F. App'x 600 (5th Cir. 2013).
[52] *Id.* at 611.
[53] *Id.*
[54] 687 F.2d at 80.
[55] *Id.* at 81–82.

that a "blue curtain" existed within the police department.[56] The Fifth Circuit held that, based on this circumstantial evidence, "a jury reasonably could . . . infer[] that . . . a conspiracy existed."[57]

In discharging his initial burden on summary judgment, Brandon Donahue avers Plaintiff will not be able to prove an essential element of her conspiracy claim because the record is devoid of any evidence showing Defendants agreed to deprive Plaintiff of her constitutional rights.[58] Brandon Donahue argues the only evidence Plaintiff offers to show the existence of an agreement is her own deposition[59] in which she was questioned about evidence of a conspiracy and responded:

> (1) "Evidence was ignored in the police report";[60]
> (2) "I wasn't given the same protection that [Mr. Donahue] was";[61]
> (3) "the fact that I didn't leave with my son on my custody day";[62] [and]
> [(4)] "the fact that Sergeant Gaudet [] assured me that he would send the file over to the District Attorney's Office from the July 7th incident."[63]

By pointing to Plaintiff's deposition testimony that is in the record,[64] Brandon Donahue argues that he has demonstrated the absence of any evidence indicating Defendants agreed to protect him from prosecution, thereby violating Plaintiff's right to equal protection. Plaintiff's testimony does not support an inference that there was an agreement between Defendants. The burden, therefore, shifts to Plaintiff to direct the Court's attention to evidence sufficient to establish that a genuine issue of material fact does indeed exist.[65]

---

[56] *Id.* at 83.
[57] *Id.*
[58] R. Doc. 90-3 at 16; R. Doc. 91-3 at 12; R. Doc. 93-1 at 5.
[59] R. Doc. 93-2.
[60] *Id.* (citing Sarah Donahue Dep. 250:1–9, 13-21, July 18, 2017).
[61] *Id.* (citing Sarah Donahue Dep. 250:22–5, July 18, 2017).
[62] *Id.* (citing Sarah Donahue Dep. 251:6–7, July 18, 2017).
[63] *Id.* (citing Sarah Donahue Dep. 251:9–12, July 18, 2017).
[64] *See Celotex*, 477 U.S. at 331.
[65] *Id.* at 322–25.

In her oppositions to Defendants' motions for summary judgment, Plaintiff points to five overt acts she contends are circumstantial evidence of Defendants' agreement to violate her right to equal protection.[66] In a prior ruling on Defendants' motions to dismiss,[67] the Court determined that all but one of the alleged overt acts had prescribed, leaving only Plaintiff's June 24, 2015 interaction with Gaudet, in which Plaintiff sought to press charges against Brandon Donahue for the alleged July 2013 battery, as the basis for her cause of action.[68] Although the prior alleged overt acts have prescribed, "[i]t does not follow, however, that the statute of limitations excludes those same allegations from the determination of whether an agreement existed."[69] Accordingly, the Court may consider the other alleged overt acts that took place before Plaintiff's June 24, 2015 interaction with Gaudet as relevant background evidence.[70]

As explained above, the four prescribed overt acts may be considered to determine whether an agreement existed. With respect to these overt acts, Plaintiff offers the following communications between Brandon Donahue and the Deputies as circumstantial evidence that an agreement existed: (1) Gaudet's phone call with Brandon Donahue during his investigation into the July 2013 alleged domestic violence incident,[71] (2) Ripoll's interview with Brandon regarding Plaintiff's mental health after Plaintiff

---

[66] R. Doc. 114 at 17–23; and R. Doc. 103 at 7–12.
[67] R. Doc. 88.
[68] R. Doc. 35 at 12, ¶ 38.
[69] *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988) ("To permit the statute of limitations to bar consideration of allegations from which a jury could infer an agreement would prevent recovery for damages suffered within the limitations period merely because the defendants formed their agreement too early."); *see also Mizell v. N. Browart Hosp. Dist.*, 427 F.2d 468, 475 (5th Cir. 1970), *abrogated on other grounds by Blair v. Page Aircraft Maintenance, Inc.*, 467 F.2d 815 (5th Cir. 1972).
[70] *See Mizell*, 427 F.2d at 475 ("[A]ny acts causing damage that might have occurred subsequent to the first one alleged could have been the basis of a recovery, even though charged as an overt act in a single continuing conspiracy, if the subsequent act had not itself also been barred.").
[71] R. Doc. 103 at 7.

complained about her lawyer's misconduct,[72] and (3) Dantagnan's interaction with both Plaintiff and Brandon Donahue following the November 2013 child custody incident.[73] These communications occurred during the course of routine police investigations and, most often, were accompanied by communications with Plaintiff. Plaintiff has offered no evidence of private meetings or secret conversations in which Defendants discussed an agreement to deprive Plaintiff of her constitutional rights.

With respect to the overt act on June 24, 2015, which has not prescribed, Plaintiff describes no communications that would provide circumstantial evidence of an agreement.[74]

Finally, Plaintiff offers as circumstantial evidence of an agreement to violate her constitutional rights that "Brandon served as a reserve officer of the St. Tammany Parish Sheriff's Office from 2004 to 2014 and had personal friendships with various Sheriff's Office employees. His role as a Reserve Deputy Sheriff was known by each of the Defendant Deputies involved in any investigation of [Plaintiff's] claims."[75]

That Brandon Donahue served as a reserve deputy sheriff is undisputed. To support her assertion that Brandon Donahue had formed "personal friendships with *various officers*," Plaintiff points to Brandon Donahue's and Scott Lee's depositions.[76] The Court's review of these depositions reveals that they either do not support Plaintiff's assertions or do not raise a *material* factual dispute. For example, in his deposition,[77] Brandon Donahue testified that "the only people current or former at the sheriff's office

---

[72] *Id.* at 9.
[73] *Id.* at 11. The other circumstances surrounding the four prescribed overt acts are not evidence, even circumstantial, of the existence of an agreement.
[74] R. Doc. 114 at 22; R. Doc 103 at 11-12.
[75] R. Doc. 114 at 17 (citations omitted).
[76] *Id.*
[77] R. Doc. 114-7.

who [he had] spent any time outside of the sheriff's office with . . . are Jeff Jardine and Scott Lee," neither of whom is a defendant in this case and neither of whom is alleged to be part of the conspiracy.[78] Lee states in his deposition that, although he and Brandon Donahue are friends, "[i]t's been years" since he has seen him.[79] No testimony from Jeff Jardine was introduced. Neither Lee nor Jardine is a defendant in this case and there is no evidence that either of them communicated with Brandon Donahue about his divorce case or with the Deputies or the Sheriff about Brandon Donahue. There is no evidence in the record that Brandon Donahue was Steven Gaudet's friend. In Gaudet's deposition, he testified that, other than speaking to Brandon Donahue on the phone once in 2013, Gaudet had "[n]ever met the gentleman before,"[80] a statement Plaintiff does not dispute.

Plaintiff's circumstantial evidence with respect to the existence of an agreement is (1) that Brandon Donahue was a reserve deputy at the St. Tammany Parish Sheriff's Office from 2012 until 2014, (2) that Defendants worked at the St. Tammany Parish Sheriff's Office, (3) that Defendants were aware of Brandon Donahue's "role as a Reserve Deputy Sheriff,"[81] and (4) that Brandon Donahue is friends with Lee and Jardine, neither of whom is a defendant. Although "determining whether a conspiracy existed . . . 'may involve questions of motive or intent,'"[82] Plaintiff's bare assertion of the existence of a conspiracy is insufficient to create a factual dispute. "[A] mere possibility, based upon speculation, is insufficient to preclude the entry of summary judgment."[83] Plaintiff offers

---

[78] *Id.* at 4.
[79] R. Doc. 114-8.
[80] R. Doc. 114-9 at 3.
[81] R. Doc. 114 at 17.
[82] *Montgomery v. Hughes*, 716 F. Supp. 261, 263 (S.D. Miss. 1988).
[83] *Id.* (citing *Brown v. Scott Paper Co.*, 684 F. Supp. 1392, 1396 (S.D. Miss. 1987)).

no evidence that Defendants held private meetings,[84] had secret communications,[85] or that Brandon Donahue asked the Deputies for assistance with his divorce.[86] Plaintiff has failed to provide the Court with "specific facts to show an agreement"[87] and, therefore, has not demonstrated a genuine factual dispute with respect to whether Defendants agreed to conspire against her.[88] Even construing this evidence in the light most favorable to Plaintiff, the Court finds no reasonable trier of fact could conclude Defendants agreed to prevent Brandon Donahue's arrest and protect him from prosecution, thereby violating Plaintiff's right to equal protection.[89] Simply stated, Plaintiff fails to create a reasonable inference that an agreement existed between Defendants to deprive her of her right to equal protection.[90]

Defendants are entitled to summary judgment on this basis alone. Nevertheless, the Court also will examine whether Defendants are entitled to summary judgment because Plaintiff has not demonstrated a factual dispute as to whether Defendants' ill will towards Plaintiff caused them intentionally to treat her differently from the way they treated other alleged victims of domestic violence.[91]

---

[84] *Jabary*, 547 F. App'x at 611; *Thomas*, 687 F.2d at 83.

[85]

[86] *See Tebo v. Tebo*, 550 F.3d 492, 497 (5th Cir. 2008); *Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979); *E.G. v. Bond*, No. 16-068, 2017 WL 129019, at *5 (N.D. Tex. Feb. 13, 2017).

[87] *See Priester*, 354 F.3d at 412.

[88] *Id.*

[89] *See Tebo*, 550 F.3d at 497 (affirming the district court's grant of summary judgment because "[the plaintiff's] allegation that Defendants were engaged in a conspiracy to violate her civil rights is conclusory. She offers no evidence of an agreement to commit an illegal act between the [Defendants]"); *Rodriguez v. Neeley*, 169 F.3d 220, 221–23 (5th Cir. 1999) (dismissing § 1983 conspiracy claims because the existence of a conspiracy agreement was supported through "conclusory allegations").

[90] *See Jabary*, 547 F. App'x at 611.

[91] *See Shipp*, 234 F.3d at 916.

**Deliberate Deprivation of Constitutional Right for No Rational Reason**

As the underlying constitutional violation in her § 1983 conspiracy claim, Plaintiff contends "she, as a 'class of one,' was 'intentionally treated differently from others similarly situated' for no 'rational' reason."[92] In *Village of Willowbrook v. Olech*, the Supreme Court held that "the Equal Protection Clause can give rise to a cause of action on behalf of a 'class of one' even when the plaintiff does not allege membership in a protected class or group."[93] "To state a claim sufficient for relief, a single plaintiff must allege that an illegitimate animus or ill-will motivated her intentionally different treatment from others similarly situated and that no rational basis existed for such treatment."[94] At trial Plaintiff must establish "that the unequal police protection had no rational basis," which requires Plaintiff to show "that the defendant deliberately sought to deprive [her] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position."[95] Evidence of ill intent is critical—"its absence will defeat an Equal Protection challenge to unequal police protection."[96]

Plaintiff, belatedly in her surreply, identified Brittany Torregano as a similarly situated comparator.[97] Plaintiff identifies the different treatment of former St. Tammany Parish Deputy Torregano, who she argues committed domestic abuse battery on his spouse and, as support, attaches an April 27, 2015 article in the *New Orleans Advocate*, titled "St. Tammany Sheriff's Deputy, wife arrested in domestic disturbance."[98] Plaintiff

---

[92] R. Doc. 60 at 25.
[93] *Shipp*, 234 F.3d at 916.
[94] *Id.*
[95] *Id.* (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000)) (internal quotation marks omitted).
[96] *Id.*
[97] R. Doc. 124.
[98] R. Doc. 124-1.

argues that in 2015, then Sheriff Strain's office arrested Deputy Derrick Torregano for domestic abuse battery and fired him following an altercation with his wife, who stabbed him during the incident,[99] but failed to arrest or fire Brandon Donahue following an altercation with his wife in 2013.

Plaintiff characterizes her "class of one" claim as one based on personal vindictiveness and acknowledges that, in addition to identifying a comparator, she must show improper motive, animus or ill will.[100] To show ill intent, a plaintiff must put forth "proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus towards the plaintiff by the defendant."[101] In *Mata v. City of Kingsville*,[102] the facts of which are substantially similar to the facts of this case, the plaintiff alleged that following a physical altercation with her husband, a police officer, "she was unjustifiably stopped on five or more occasions by police officers . . . and that [her husband] stalked her in his patrol car."[103] The district court granted summary judgment in favor of the defendants, and the Fifth Circuit affirmed the dismissal, explaining that

> While it is certainly conceivable that members of the police department may have harbored ill will towards [the plaintiff] since [her husband] was employed as an officer of the department, this Court has repeatedly acknowledged that "conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment."[104]

---

[99] R. Doc. 124 at 3.
[100] *Id.* at 2 (citing *Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 388 n.2 (5th Cir. 2008)).
[101] *Mata v. City of Kingsville*, 275 F. App'x 412, 415 (5th Cir. 2008) (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) (internal quotation marks and citation omitted)).
[102] *Id.*
[103] *Id.* at 414.
[104] *Id.* (citing *Roberts v. Cardinal Servs.*, 266 F.3d 368, 376 n.33 (5th Cir. 2001) (internal citation omitted)).

In contrast, in *Shipp v. Mahon*,[105] the plaintiff alleged she was the victim of a long, increasingly violent pattern of spousal abuse that culminated in her husband's kidnapping, raping, and shooting her in the chest with a shotgun.[106] The plaintiff, who fortunately survived the assault, claimed that the local sheriff's department ignored her reports of domestic violence because her mother-in-law was a sheriff's deputy and also happened to be the dispatcher who received the plaintiff's call reporting the abuse.[107] The Fifth Circuit concluded

> It is undisputed that Betty Shipp's son engaged in reprehensible behavior against her daughter-in-law that finally resulted in law enforcement and judicial intervention. It is not improbable that Betty Shipp developed some animosity against her daughter-in-law during her volatile relationship with Dalton or after Shipp fled when Dalton's escalated abuse prompted criminal charges against him. If deputy Betty Shipp did foster ill-will against her daughter-in-law that ultimately influenced the level of protection Shipp received from the [Sheriff's Office], Shipp may be able to establish an unequal police protection claim.[108]

The court vacated and remanded the case, concluding that with this circumstantial evidence of ill-will the plaintiff "may be able to establish an unequal police protection claim within the framework elucidated in *Village of Willowbrook v. Olech*."[109]

In this case, Defendants point to the affidavit and deposition of Steven Gaudet as demonstrating that "any differential treatment Plaintiff may have received was rationally based upon investigative judgment and discretion."[110] In his affidavit, Steven Gaudet states that he did not attempt to dissuade or intimidate Plaintiff from moving forward with criminal charges against her husband, but did tell her that the decision whether or

---

[105] 234 F.3d 907 (5th Cir. 2000), *overruled on other grounds as recognized in McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002).
[106] *Shipp*, 234 F.3d at 916.
[107] *Id.*
[108] *Id.* at 916–17.
[109] *Id.* at 917.
[110] R. Docs. 91-3, -5, -12.

not to bring the case to trial rests with the District Attorney. He further told Plaintiff that he would speak with the District Attorney's Office about the July 7, 2013 incident.[111] In his deposition, Steven Gaudet testified that Plaintiff did not approach him until two years after the initial incident.[112] Gaudet testified that he did contact the district attorney's office to inform them about Plaintiff's desire to press charges.[113]

The Sheriff and the Deputies, by submitting "affirmative evidence that negates an essential element of [Plaintiff's] claim," have shifted the burden of production to Plaintiff.[114] The plaintiff responds that "she, as a 'class of one,' was 'intentionally treated differently from others similarly situated' for no 'rational' reason."[115]

With respect to whether Plaintiff was treated differently from other similar situated individuals, Plaintiff correctly points out that the "requirement that a class-of-one plaintiff's comparators be 'similarly situated' is not a requirement susceptible to rigid, mechanical application—'[t]here is no precise formula to determine whether an individual is similarly situated to comparators.'"[116] Instead, the determination is case specific and depends on the facts and context of the case.[117] To state a class of one claim under the equal protection clause, a plaintiff must demonstrate that she has been treated differently from others similarly situated and there was no rational basis for the disparate treatment.[118] The two page newspaper article represents that the deputy was stabbed in the back during the domestic disturbance and that both former Deputy Torregano and his

---

[111] R. Doc. 91-5 at 3–4.
[112] R. Doc. 91-3 at 20 (citing Gaudet Aff. at ¶ 11).
[113] R. Doc. 114-9 at 15–19.
[114] *See Celotex*, 477 U.S. at 325.
[115] R. Doc. 60 at 25.
[116] *Lindquist*, 669 F.3d at 233.
[117] *Id.* at 234 (quoting J*ennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004)).
[118] *Stotter v. University of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007).

wife were arrested the following morning.[119] By contrast, neither Sarah Donahue nor Brandon Donahue wished to pursue charges after the July 7, 2013 incident and neither one was arrested.[120] Plaintiff did not approach Gaudet about arresting Brandon Donahue until two years after the incident occurred.[121] The Court finds that, after considering the facts and context of this case as contrasted with the Torregano case, Plaintiff has not put forward evidence that she was treated differently from a similarly situated individual.

Although the lack of a comparative is sufficient to defeat Plaintiff's claim, the Court will examine whether Plaintiff has created a disputed issue of fact with respect to whether an illegitimate animus or ill-will motivated Defendants' treatment of her and whether any rational basis existed for such treatment   Plaintiff points to five overt acts, claiming that this circumstantial evidence, when viewed as a whole, demonstrates Defendants' coordinated effort to undermine Plaintiff and assist Brandon Donahue in the upcoming divorce and child custody proceedings.[122] The bulk of Plaintiff's evidence stems from overt acts that have prescribed. Because in the context of a conspiracy claim under § 1983, "the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy,"[123] the Court evaluates only Plaintiff's June 2015 interaction with Gaudet to determine whether Plaintiff has established a genuine issue of material fact with respect to whether Defendants "deliberately sought to deprive [Plaintiff] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position."[124]

---

[119] R. Doc. 124-1.
[120] R. Doc. 35 at 4, ¶ 15.
[121] R. Doc. 91-3 at 20 (citing Gaudet Aff. at ¶ 11).
[122] R. Doc. 103 at 7–11; R. Doc. 35 at 13.
[123] *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987).
[124] *Shipp*, 234 F.3d at 916 (internal quotation marks omitted) (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000)).

To show Defendants' ill intent and lack of a rational basis for the actions of Gaudet in June 2015, Plaintiff points to the fact that, after she approached Gaudet about pressing charges against Brandon Donahue for the July 2013 incident of alleged domestic violence, "he was unsupportive of charges being filed . . . and forwarded no documents (including the photos of [Plaintiff's] injuries) to the D.A. for evaluation."[125] Plaintiff claims that, in furtherance of the conspiracy to protect Brandon Donahue from arrest and prosecution, Gaudet attempted to intimidate and discourage Plaintiff from pursuing charges against Brandon Donahue by informing Plaintiff that any criminal charge against Brandon Donahue had "probably prescribed."[126] According to Plaintiff, Gaudet's actions demonstrate he "was undermining efforts to prosecute Brandon Donahue for domestic violence in furtherance of a conspiracy to protect Brandon Donahue from prosecution and aid him in his divorce and custody proceedings."[127] Gaudet explains his actions by testifying in his deposition that Plaintiff did not approach him until two years after the initial incident.[128] Gaudet admits he did not forward any materials to the district attorney's office, but states he did contact the district attorney's office to inform them about Plaintiff's desire to press charges,[129] and Brandon Donahue was charged thirteen days after Plaintiff contacted Gaudet about her desire to press charges.[130] Given these facts, it is implausible that Gaudet's actions stemmed from "a totally illegitimate animus toward[]" Plaintiff or that they had no rational basis.[131] "[C]onclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and

---

[125] R. Doc. 103 at 11.
[126] R. Doc. 35 at 12.
[127] *Id.* at 12.
[128] R. Doc. 91-3 at 20 (citing Gaudet Aff. at ¶ 11).
[129] R. Doc. 114-9 at 15–19.
[130] R. Doc. 91-11 at 11:20–24.
[131] *Mata*, 275 F. App'x at 415.

testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment."[132]

A reasonable jury could not conclude, without more, that Gaudet's June 2015 interaction with Plaintiff demonstrates his animus towards her or that there was no rational basis for his conduct during their interaction. Because Plaintiff has not put forth any evidence demonstrating Defendants' malicious intent to violate her right to equal protection, she has failed to create an issue of disputed fact with respect to whether any perceived differential treatment was motivated by illegitimate animus or ill will.[133] Further, Plaintiff has not created a material factual dispute with respect to whether Defendants had a rational basis for treating her differently from any other alleged victim of domestic violence.

Plaintiff has not made out the elements necessary for a "class of one" claim. Defendants are entitled to summary judgment on Plaintiff's § 1983 claims on this basis.

## STATE LAW CLAIMS

The Deputies[134] and the Sheriff[135] move for summary judgment dismissing Plaintiff's state law causes of action.[136] The Court in its Order and Reasons on Defendants' motions to dismiss[137] has dismissed Plaintiff's state law causes of action for abuse of rights against Donahue, the Deputies, and the Sheriff,[138] as well as her negligence claim against

---

[132] *Id.* (citing *Roberts*, 266 F.3d at 376 n.33 (internal citation omitted)).
[133] *See* FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 322–23.
[134] R. Doc. 91.
[135] R. Doc. 90.
[136] R. Doc. 35 at 15–16, ¶¶ 54–60.
[137] R. Doc 88. In footnote 223 of the Court's Order and Reasons, the Court listed the claims that survived Defendants moved to dismiss. *Id.* at 43. The Court did not rule on Plaintiff's remaining state law claims as set forth above. Nevertheless, Plaintiff states in her oppositions to the Deputies and the Sheriff's Motions to Dismiss that the Court "appears to have dismissed Plaintiff's Louisiana constitutional claims." R. Doc. 113 at 4 n.2; R. Doc. 114 at 4 n.2.
[138] R. Doc. 88 at 38.

Brandon Donahue.[139] For the reasons expressed in the Court's Order and Reasons on the motions to dismiss, the Court now dismisses Plaintiff's causes of action under the Louisiana Constitution for violations of her right to petition, to free speech and association,[140] and to privacy,[141] as well as for violations of her due process rights.[142] Plaintiff's remaining cause of action for a state constitutional violation is based on equal protection for violations occurring after June 24, 2015.[143] "Louisiana jurisprudence does not recognize an equal protection claim in the context of only a single member, or a class-of-one plaintiff."[144] Defendants' motion for summary judgment on Plaintiff's state constitutional claims is granted.

Because the claims for constitutional violations have been dismissed, Plaintiff's claim against the Sheriff for respondent superior liability based upon the actions of Brandon Donahue and the Deputies[145] also is dismissed.

### *MONELL* CLAIM

Plaintiff claims the Sheriff's alleged failure to adequately train "his officers in the handling of domestic violence complaints"[146] "amounts to a deliberate indifference to the

---

[139] *Id.* at 41.

[140] *Id.* at 32 n.175; *see e.g., Davis v. Allen Parish Serv. Dist.*, 210 F. App'x 404, 413 (5th Cir. 2006) ("Inasmuch as we have determined that summary judgment in favor of Allen Parish Hospital was proper on Davis's § 1983 First Amendment claim, it was also proper on her claim brought under the Louisiana Constitution."); *Lawson v. City of Monroe*, No. 12-2233, 2013 WL 3967161, at *5 (M.D. La. July 31, 2013), *aff'd*, 579 F. App'x 305 (5th Cir. 2014) (noting Louisiana right to petition, free speech, and free association has been interpreted to be the same as federally protected rights); *Hymes v. City of Natchitoches*, No. 10-1167, 2012 WL 4855444, at *11 (W.D. La. Oct. 10, 2012) (same).

[141] Although the Louisiana Constitution's affirmative right to privacy creates a higher standard of liberty than the U.S. Constitution, both protect only reasonable expectations of privacy. *Banks v. Dep't of Pub. Safety & Corr., Louisiana Training Inst.-E. Baton Rouge*, 598 So. 2d 515, 518 n.3 (La. App. 1 Cir. 1992) (citing *State v. Hernandez*, 410 So. 2d 1381, 1385 (La. 1982)); *see also Bryant v. City of Monroe*, No. 12-2378, 2013 WL 5924731, at *12 (W.D. La. Oct. 31, 2013).

[142] Doc. 88 at 32.

[143] *Id.* at 21, 26.

[144] *Ray v. City of Bossier City*, 37-708 (La. App. 2 Cir. 10/24/03); 859 So. 2d 264, 274.

[145] R. Doc. 11 at 13–14, ¶¶ 46–52.

[146] R. Doc. 113 at 14.

rights of persons with whom the police come in contact."[147] In his motion for summary judgment, the Sheriff seeks dismissal of this *Monell* claim against him. Municipal liability under § 1983 has three elements: (1) a policy maker, (2) an official policy, and (3) "a violation of constitutional rights whose 'moving force' is the policy or custom."[148] Having found no underlying constitutional violation in this case, the Court dismisses this claim. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have authorized the [alleged violation] is quite beside the point."[149]

## CONCLUSION

**IT IS ORDERED** that the motions for summary judgment filed by Brandon Donahue;[150] Sergeants Michael Ripoll, Jr., Alex Dantagnan, Jr., and Steven Gaudet;[151] and Sheriff Rodney J. Strain, Jr.[152] are **GRANTED**. Plaintiff's claims against all Defendants are **DISMISSED** with prejudice.[153]

**New Orleans, Louisiana, this 11th day of September, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[147] *Id.* at 7 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).
[148] *Piotrowski v. City of Houst.*, 237 F.3d 567, 578 (5th Cir. 2001).
[149] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).
[150] R. Doc. 93.
[151] R. Doc. 91.
[152] R. Doc. 90.
[153] Because Plaintiff is not the prevailing party on any of her claims, her request for attorney's fees pursuant to 42 U.S.C. § 1988 also is dismissed.